<h2 style="text-align:center">RAMSEY v. THE STATE.</h2>

| 92 | 53 |
| 93 | 89 |
| 92 | 53 |
| 114 | 8 |
| 92 | 53 |
| e124 | 308 |

1. It is not cause for a new trial that a witness, while under examination, expressed or intimated an opinion that the accused was guilty of the crime charged; no ruling of the court being invoked or made thereon.
2. For the solicitor-general to suggest to a witness under examination what is necessary in order to claim the privilege of not criminating himself, if improper, will not vitiate the trial.
3. Where the State's counsel, in his argument to the jury, misquotes the evidence, and on being corrected insists that though the letter of the evidence be against him, the meaning of it by fair inference is equivalent to what he had before insisted upon as its letter, there is no injustice done the accused by leaving the legitimacy of the inference to the jury, and by the refusal of the court to determine the question, the court saying that he (counsel) could argue any conclusion he drew from the testimony he pleased, but in representing what witnesses swore to he must not misquote them.
4. An officer may arrest without warrant for wife-beating, if he arrives at the scene during the progress of or immediately after the beating, he being attracted thereto by the noise of the disturbance or the outcry of the woman.
5. Resistance to an arrest may begin in the use of words which import defiance and indicate a purpose to use violence if necessary, the words being followed up by the actual use of violence terminating in the officer's death. After the use of such words, the officer may instantly employ such degree of force as is necessary to reduce the party to submission and accomplish the arrest. There was evidence tending to show that the officer went to the prisoner's house at the instance of the prisoner's wife, to protect her against his violence, and also that the homicide was committed in resistance to the arrest.
6. Where an officer plainly and distinctly announces his purpose to make an arrest for a breach of the peace which has just taken place in his presence or hearing, and all the demonstrations of force which follow the announcement are in line with that purpose, and fairly construed would indicate to a reasonable man no intention at variance with it, and the person whom he seeks to arrest knows or ought to know that by submitting he could instantly terminate all demonstrations of force on the part of the officer,

the case is not one in which such person could have reasonable grounds to believe a felony was intended or about to be committed upon him. Consequently, a refusal by the court to charge the jury on that theory was not error.

7. It was not error to decline to charge the jury as requested touching what constitutes an arrest, nor as to the mode of making an arrest, nor as to what may be insisted upon as a condition of submitting to or acquiescing in an arrest.

8. Where the case on trial involves no question as to the defence of habitation or property, it is not error to decline to charge the jury that a man may repel force by force in defence of his person, habitation or property.

9. In order to enable the jury to understand the law of voluntary manslaughter in its whole scope and spirit, the full definition of it as embraced in the code may be given in charge to the jury, although the case on trial be not one of provocation by words, threats, menaces or contemptuous gestures.

10. It was not error to decline to charge on excusable homicide as distinguishable or not distinguishable from justifiable homicide, nor on cases of justifiable homicide other than those enumerated in the code.

11. No error is apparent in charging the jury touching the prisoner's statement.

12. Where the court charges that if the jury have a reasonable doubt of the guilt of the defendant it would be their duty to acquit, and adds that if they are satisfied beyond a reasonable doubt as to his guilt it would be their duty to convict, the jury should and probably would understand from his instructions that they were to acquit of any grade of offence touching which they had a reasonable doubt, and convict of any grade of offence touching which they had none. Other parts of the charge presented the law as to the different grades of homicide.

13. The evidence warranted the verdict, and there was no error in denying a new trial.

March 14, 1893.

Indictment for murder. Before Judge RONEY. Richmond superior court. October adjourned term, 1892.

For the material facts shown by the evidence see the opinion. Following are the grounds of the motion for new trial, in the order of the head-notes ruling upon them :

1. A witness for the State, on cross-examination, gave the following answers to questions asked : Q. " Have

you not feeling against this defendant?"   A. "Nothing more than he is a murderer and a violator of the law." Q. "You do not know that he violated law, of your own knowledge?"   A. "No, sir."   Q. "You do have feeling against him?"   A. "No more than I would if anybody else had committed such a crime."   Error is assigned, in that the court did not, without request, rebuke the witness or otherwise correct the wrong thus done by him in presence of the jury.

2. The same witness was asked by defendant's counsel, "Are you not one of the parties that repaired to the Augusta Orphan Asylum and threatened to take this negro's life?"   The solicitor-general objected on the ground that the witness could not be required to answer the question, because it might tend to criminate him. Defendant's counsel replied, that the question was propounded to show the state of feeling the witness had against defendant, and that the solicitor-general had no right to object on the ground stated, the objection being one which the witness alone could make in his own behalf, and unless he did so, he could be made to answer the question.   The court permitted the question to be asked, and the witness declined to answer.   He was asked by defendant's counsel to give his reason for so declining, and the solicitor-general asked, "Do you refuse to answer because it tends to criminate you?"   To this the witness replied he did.   Error is assigned, because the court did not, without request, correct or otherwise notice this action of the solicitor-general.

3. In conclusion the solicitor-general argued that the witnesses for defendant had sworn, that Harris had his pistol pointed at defendant and that it was cocked; the solicitor-general claiming therefrom that they were unworthy of credit, because if that were true Harris would have shot defendant.   Defendant's counsel objected, claiming that none of defendant's witnesses had sworn

that the pistol was cocked, but the only reference to the pistol being cocked was in that part of defendant's statement referring to a time when all the witnesses for defendant had left the house. The solicitor-general in reply said, he was willing for the stenographer's notes to determine which was correct as to the pistol being cocked, that it did not matter whether the pistol was cocked or not; if it were drawn and presented at defendant who was unarmed, their testimony·would be equally discredited; and continued so to argue until the stenographer found the reference to this point, and defendant's counsel had it read by the stenographer from the defendant's statement—as counsel for defendant claimed. The solicitor-general then claimed the right to infer or conclude that the witnesses for defendant intended to convey the impression that the pistol of Harris was cocked, when they claimed to have seen Harris have it pointed at Ramsey. Counsel for defendant objected, and asked the court specifically to rule on the point. The court overruled the objection, stating that counsel could argue any conclusion that he drew from the testimony he pleased, but in representing what witnesses swore to, he must not misquote them; and allowed the solicitor-general so to argue as to the above conclusion.

4-5. The court gave the following instructions in charging the jury: "If you find Harris was manifestly endeavoring by violence to commit a felony on defendant, and the danger was so urgent and pressing as to render it necessary for the defendant to kill him in order to save his own life, he would be justifiable and you ought to so find. If, however, you should believe that Harris had no intention of committing a felony on the person of the defendant, had no intention to do violence to his person, but went to defendant's house as an officer of the law, at the instance of the defendant's wife, to protect her against her husband's assaults, and being

there in that capacity only, attempted to arrest the defendant in a legal manner, and defendant refused to be arrested and while resisting arrest killed Harris, then the killing would not be in self-defence and you ought to so find.   If Harris was an officer of the law, and you should find that the defendant had violated the law by beating his wife, then Harris had the right to arrest him, and to make the arrest he could use such force as was necessary to effectuate the arrest.   If he attempted to arrest the defendant and the defendant resisted, and he used only just such force as was necessary to accomplish the arrest, and was killed by defendant while pursuing his duties as an officer of the law, the defendant would be guilty of murder, and you ought to so find. If Harris (the deceased) employed unnecessary force, and by that cause alone was shot and killed, then the defendant is not guilty, and you ought to so find.   If he only employed such force as was necessary to arrest defendant, and while in discharge of his duty was killed by defendant who was resisting arrest, then defendant would be guilty of murder, and you ought to so find." Error is assigned on these instructions, in that they assume that defendant was resisting arrest, when there was no evidence to justify any reference in the charge to his so resisting; that there was no evidence showing at whose instance or for what object Harris went to defendant's house; that the charge further assumes the attempted arrest to have been legal if defendant had violated (not was then violating) the law by beating his wife, without regard to whether the officer had a warrant or other legal process, the evidence showing that he in fact had none; and that the charges were argumentative.

6.  Error is assigned on the refusal of the court to give in charge the following: "If the officer, in making an arrest or attempting to make an arrest, used a deadly

weapon when there was no legal necessity therefor, and if the defendant or party sought to be arrested was not forcibly resisting arrest with a deadly weapon, or otherwise seeking to commit a serious bodily harm upon the officer or to endanger the life of the officer, and if the party sought to be arrested really believed, acting under the fears of a reasonable man, that his own life was in danger, or that a serious bodily harm amounting to a felony was about to be perpetrated upon him by the officer, he would be justified in law in taking the life of the officer. The evidence or reality of the felonious intent of an assailant must be gauged by the defendant's opportunity at the time; and if he have reasonable grounds to believe a felony to be intended, it makes no difference that such was really not the case. Under such circumstances he is justified in killing."

7. Requests were made to give the following instructions to the jury; and the refusal to do so is assigned as error: "To constitute an arrest, the party against whom the process is awarded must either be actually touched by the officer, or confined in a room, or must submit himself, either by words or action, to be in custody; and the merely given charge or causing him voluntarily to appear before the magistrate without the person's being taken in actual custody, will not amount to an arrest. A person having authority to arrest another must do it peaceably and with as little violence as the case will admit of. He must touch the person and ought to do it without violence, unless the circumstances require roughness; and if resisted, he may use force sufficient to effect his purpose, but if no resistance be offered, or attempt at escape, he has no right, rudely and with violence, to seize and collar his prisoner. It is the right of a party sought to be arrested, to insist upon the arrest being made in a legal manner before he need acquiesce therein, and he owes no duty to instruct or sug-

gest to the officer how to make a legal arrest, nor suggest that he refuses to submit thereto because the arrest is not made in a legal manner. He may, if he choose, decline to acquiesce in the arrest, or decline voluntarily to submit himself to be considered under arrest. To do either is not, of itself alone, to resist arrest. It is not an arrest to say, 'Consider yourself under arrest; get your coat and go with me.' If nothing more be done by the person seeking to make the arrest, or if the person sought to be arrested does not submit himself to be considered under arrest, or if he does not by word or act acquiesce in the arrest, under such circumstances and conduct upon the part of both parties as have just been detailed, it is not the legal right of the officer to strike the other party, if the other party does not say more than that he will not go with the officer, or that the officer cannot take him."

8. Refusal to charge : " A man may repel force by force in defence of his person, habitation or property, against one who manifestly intends and endeavors by violence or surprise to commit a felony upon either. In such case he need not retreat, but may pursue his adversary until he has secured himself from danger, and if he kill him in so doing, such killing is justifiable self-defence."

9. The court charged : "Provocation by words, threats or contemptuous gestures, shall in no case be sufficient to free the person killing from the guilt and crime of murder." Error is alleged, in that the evidence did not show that defendant killed Harris because of any such provocation.

10. Refusal to charge : " Excusable homicide is defined to be that wherein the party killing is not altogether free from blame, but the necessity which renders it excusable may be said to be partly induced by his own act. Under the code or law of Georgia, there is no differ-

ence or distinction between this manner of homicide, and what is known as justifiable homicide. If either be found to exist, the defendant must be acquitted. All other cases than those enumerated in the code, which stand upon like footing of reason and justice, amount to justifiable homicide."

11. The court charged : " Now, along with the sworn testimony in the case, you may take into consideration the statement of the defendant," etc.; the alleged error being, that the charge says the jury *may* take, which is not a correct statement of the law.

12. The court charged : " If, after listening to the charge of the court and applying the law given you in charge to the testimony in the case, then you have a reasonable doubt as to the guilt of the defendant, and that is a doubt arising from the testimony, or the want of testimony, then it would be your duty to acquit the defendant; on the contrary, if your mind is satisfied beyond a reasonable doubt as to the guilt of the defendant, it would be your duty to convict." Error is alleged, in that the court practically told the jury that they should convict of the offence charged, if they were satisfied beyond a reasonable doubt as to defendant's guilt; whereas the court should have added, "of such offence as you may be satisfied he is guilty of."

13. Verdict contrary to law and evidence.

M. P. Foster and J. Ganahl, Jr., for plaintiff in error.

J. M. Terrell, attorney-general, W. H. Davis, solicitor-general, and Boykin Wright, *contra*.

Simmons, Justice.

Henry Ramsey was convicted of the murder of Robert Y. Harris. A new trial was refused, and he excepted. The following appeared from the evidence : The deceased was the marshal of Summerville, the place of the homicide, and was killed while attempting to arrest the

defendant.    About one o'clock in the afternoon on
Sunday, the wife of the defendant was heard making
outcries and appealing for help.   The defendant had
been beating her inside their house.   She escaped and
went towards the house of the deceased, which was
about 180 steps from the defendant's house, and called
for him to come there and protect her.   The defendant
ran after her with a strap in his hand, caught her and
took her back into the house and began beating her
again.   The beating could be heard at some distance,
and several persons residing in the neighborhood were
attracted to the scene by her outcries.   The deceased
went to the house, and as he got to the door the woman
was calling for him.   He walked in and asked the de-
fendant what was the matter,—what was he beating his
wife for?   The defendant made no reply, but his wife
complained of the beating, said he had cut her back all
to pieces, and begged the deceased to protect her.   The
deceased then told the defendant to stop or he would
have to arrest him.   The latter replied that "it would
take a better man than he (the deceased) was to do it."
The deceased told him to "get his hat and coat and come
on."   The defendant said he would not go.   The de-
ceased said, " Ain't you going with me?"   The defend-
ant again refused to go, and said, " You may take me,
but if you do, you will have to carry this body dead."
The deceased then drew from his pocket a weapon
which it seems he was accustomed to use for the pur-
pose of a policeman's club,—a leather sling about a foot
long, in the end of which, covered with the leather,
was a piece of lead about two inches long and about
four in circumference at the widest part; and with it he
struck the defendant a blow on the head.   He was left-
handed, but used the sling with the right hand.   Be-
fore the blow was struck, all others who were present
besides the defendant and his wife and the deceased,

except one witness, had left the scene of the encounter. This witness testified that the deceased put his left hand in his pistol pocket, but did not draw his pistol; that the woman called to him not to shoot her husband, and shoved him out of the room, on the door steps, from which he fell to the ground, the defendant at the same time shutting the door; and that the defendant then grabbed his gun from behind the door, opened the door and shot the deceased in the head while the latter was on his knees on the ground, in the act of reaching for his pistol which had fallen from his pocket. On the other hand, the defendant's witnesses testified that before they left the house and after the defendant had refused to submit to arrest, the deceased drew the pistol and pointed it at the defendant; and that the deceased was shot while standing on the steps. The defendant, in his statement to the jury, claimed that at the time of the shooting the officer's pistol was pointed at him, but no one else claimed to have seen this. Immediately after the homicide, the defendant said, "I have shot Mr. Harris and will be hung for it," and left the house. When caught and asked why he had killed the deceased, he said he did not know. At the trial he admitted the beating of his wife, her calls for help, the attempt to arrest him, his acquaintance with the officer, and his refusal to be arrested, that his refusal preceded the use of force by the officer, and that it was not until after the blow, when he still persisted in his refusal, that the officer pointed the pistol at him.

Under this state of facts the jury were clearly warranted in finding the defendant guilty of murder. At the time the deceased went to the house, the defendant was engaged in a violation of the public peace amounting to an offence against the laws of the State (Code, §4573); and it was the duty of the deceased, as a peace-officer, to arrest him. This he could do without a war-

rant. The code (§4723) declares that an arrest may be made by an officer without a warrant if the offence is committed in his presence. And where a breach of the peace is committed, it is to be regarded as in the officer's presence, so far as to authorize an arrest without a warrant, if he hears the noise of the disturbance and the outcries of the person assaulted, whether he sees the act itself or not. "It is a general principle that an offence is considered to be committed 'in the view' or 'in the presence' of an officer where any of his senses affords him knowledge that an offence is being committed. Therefore, an officer on the street who hears the noise of an assault or an affray in a house, is justified in entering and making an arrest for a breach of the peace, although all is quiet when he enters the room whence the sounds proceed. In such a case the breach of peace occurs 'in the presence' of the officer within the meaning of the law." Hawley, Law of Arrest, 38; Dilger v. Commonwealth, 11 S. W. Rep. (Ky.) 651. And see 1 Whart. Cr. L. §439. It was the duty of the defendant, knowing as he did the official character of the deceased, and that he had rendered himself liable to arrest, to submit peaceably and go with the officer as directed. But from the outset his language and manner were defiant. He not only refused to surrender, but exhibited a determination to use violence against the officer if the latter proceeded with the arrest. He declared that it would take a better man than he was to arrest him, and that if he did make the arrest he would take his body dead. These declarations put the officer on notice that the arrest could not be made peaceably, but that he would be compelled to resort to force and to more than a moderate degree of it,—in fact, that he would have to fight to the death. It is the right and duty of an officer who is resisted in attempting to make a lawful arrest, to use such force as may be necessary to compel submission

and accomplish the arrest; and where a person taken in a criminal assault upon another, defies the authority of the officer and by threats of violence seeks to intimidate him, the officer is not bound to wait until he is actually assaulted before himself resorting to force. If it is apparent that the person he is seeking to arrest intends and is able to resist with violence, the officer may use such force as he may reasonably consider necessary to compel surrender. That the defendant meant to execute his threats, and that the force used by the officer did not go beyond what the occasion demanded, is demonstrated by the conduct of the defendant afterwards; and certainly he has no right to complain that the officer took him at his word. In such cases, the presumption, in the absence of any clear showing to the contrary, is, that the officer acts in good faith and with the purpose solely of doing his duty under the law. In the present case, all the demonstrations of force on the part of the officer were in line with this purpose, and fairly construed would indicate no intention at variance with it. No force was used by him until after the defendant had persisted in his refusal to submit, and had accompanied his refusal with threats ; and if it be true that the officer had a pistol in his hand, or pointed it at the defendant, the fact that he did not shoot it, but instead used the sling, tends to show that his purpose was not to kill the defendant, if he could arrest him without going to that length. There was no reason for the defendant to suppose that his life would be in danger, or that any injury would be inflicted upon him by the officer, if he submitted, as it was his duty to do. And when by doing this he could instantly have terminated all demonstrations of force on the part of the officer, he could not shield himself behind the defence that he acted under the belief that the killing was necessary to save his own life. If it be true that his life or person was in

danger, it was so only because he chose to persist in the defiant attitude of an outlaw conscious of his guilt and that it was his duty to submit. He could not set up as justification a danger which he knew or ought to have known could be avoided by his yielding obedience to the law, instead of by taking the life of its officer who, was simply attempting to do his duty under the law. He cannot in this manner take advantage of his own wrong. The doctrine of necessity does not apply in favor of one who has no reason to apprehend a greater injury than a lawful arrest. The case, therefore, is clearly not one of justifiable homicide.

Whether there was such reasonable provocation as to justify the excitement of passion and reduce the homicide to manslaughter, would depend upon whether the force used by the officer was unnecessary or excessive, or not. This question the jury have passed upon, under the charge of the court, and their finding is sustained by the evidence. The law as to the different grades of homicide was fairly presented to the jury, and there is no error in the charge or in the refusal to charge as requested, which would require a new trial. It is unnecessary to deal specifically with the numerous assignments of error. Such of the questions presented as are not discussed in this opinion, are sufficiently dealt with in the head-notes.          *Judgment affirmed.*