### 'GORDON *et al. v.* HOGAN.

The evidence in this case sufficiently sustains the verdict against the defendants for false imprisonment, and it does not appear that the trial judge committed any error, either in the charges or refusals to charge, which was hurtful to the defendants. The verdict was not excessive.

Argued November 14, — Decided December 12, 1901.

Action for false imprisonment. Before Judge Reagan. Spalding superior court. May 21, 1901.

*R. D. Jackson,* for plaintiffs in error.
*M. W. Beck* and *T. E. Patterson,* contra.

LITTLE, J. Hogan instituted an action against Gordon of Spalding county, and Ragan of Carroll county, to recover damages for false imprisonment, alleging that Gordon unlawfully arrested and imprisoned him in the guard-house of the City of Griffin without reasonable or proper cause, and that such imprisonment was made at the instigation and procurement of defendant Ragan. The defendant Gordon justified the arrest of the plaintiff, on the ground that he was a police officer of the City of Griffin, and was empowered to make arrests for violations of the State law, and that there was, at the time of the arrest, a legal warrant for the arrest of Hogan in Carroll county. It does not appear, however, that he had the warrant at the time of the arrest, or that he had ever had it — that he had ever seen it, or, indeed, that he acted under knowledge that a warrant was in existence; for he himself testified that he arrested Hogan on directions on a postal card signed "J. G. Tanner, sheriff," and that was the only authority he had for making the arrest. An officer may not make an arrest without a warrant, unless the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Penal Code, § 896. In delivering the opinion of the court in the case of *Thomas* v. *State,* 91 *Ga.* 206, Chief Justice Bleckley said: "No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that as a general rule the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public officer." At the time of the arrest Hogan had not committed any offense in the presence of

Gordon; he was not endeavoring to escape; because, under the evidence of Hogan, he had voluntarily come to Griffin (when he was arrested) from his home, and was attending to business there. Nor was there likely to be a failure of justice for the want of an officer to issue a warrant; for Gordon testified that when Hogan was arrested, "Mr. Carhart, a justice of the peace, was in a few feet of us," and his office was in fifty yards of the place; and, quoting again from Chief Justice Bleckley in *Thomas* v. *State*, supra, "Any information as to the commission of an offense, which would serve as a reasonable basis for making an arrest, would serve for suing out a warrant." But not only did Gordon arrest Hogan, but also confined him in the guard-house of the City of Griffin. False imprisonment is a violation of the personal liberty of a person, and consists in confinement or detention of such person without sufficient legal authority (Penal Code, § 106); and so careful is the law of the personal liberty of the citizen that he who arrests, confines, or detains a person without process, warrant, or legal authority to justify it, violates the law and is himself subject to arrest and punishment, be he a private person, the high sheriff, his deputy, a constable, a policeman, or detective. The evidence makes a clear case of false imprisonment against Gordon, the policeman, for which he was liable in damages to the plaintiff.

The other defendant, Ragan, insists that he is not liable, because he had rented a mule, buggy, and harness to the plaintiff at a stipulated price per month, all of which had not been paid, and on information that Hogan had disposed of his property he caused a warrant to issue for Hogan's arrest, and he was arrested under the warrant and brought to Carrollton. The matter was talked over between Hogan and Ragan, and it was agreed between the parties that the plaintiff might return to Senoia and bring the horse and buggy back to Carrollton. To this the deputy-sheriff having the warrant consented. From information they decided that Hogan would not return on the day fixed (May 19), for that day had passed without his presence in compliance with his promise; so on May 19, Ragan, using the sheriff's name by his authority, instructed the police at Griffin to look out for Hogan; but about six o'clock of the same day Hogan did return, and the next morning Ragan and Hogan settled, and the latter then departed in peace. On May 20, a notice to the police at Griffin, not to "bother Hogan; he has

settled," was given to Hogan, and, at the same time, an instrument in writing as follows: "Mr. W. J. Hogan and I have had settlement in full. May 20, 1899. [Signed] E. A. Ragan." It was after this that Hogan was arrested; and the defendant pleads that if Hogan had exhibited these documents at the time, he would not have been arrested, and, by not having done so, the arrest was attributable to his own negligence. To us these circumstances seem to present a singular view of that great principle which is the foundation of a republican government, the right of personal liberty. We trust that we have not yet reached a period in the progress of our State when one who was a defaulting debtor, but who has satisfied his creditor, must, to have immunity from arrest, carry with him and produce satisfactory evidence from his creditor that he has been settled with. The criminal processes of this State can not lawfully be used as the means for the collection of a debt. A warrant issued for the apprehension of one charged with crime is of serious import, and is issued only in the interest of the public. More than that, it is the *mandate* of a judicial officer to take the person named into his custody, and keep him so until discharged by *law*, not by the *prosecutor*. The affiant on whose oath the warrant issues may abandon the prosecution or refuse to prosecute. Nevertheless the only proper course for the officer to pursue is to obey the mandate and bring the person arrested before a proper officer for examination, which may then be entered into even against the wishes of the prosecutor. It is, and ought to be, more difficult to stop the progress of proceedings inaugurated by the oath of a citizen to punish one for a crime with which he is charged, than to put them in motion. A crime can not legally be condoned by the individual who has specially suffered, nor is it in his power to inflict or withold punishment.

When the plaintiff was arrested and brought to Carrollton, in the interest of the public an inquiry should have been entered into to ascertain whether there was foundation for the charge; but when he was allowed to go at large for a specific purpose, and failed to return at a specified time, in consequence of which the police were notified to look out for him, such notice would seem to have been given, not because he had committed a crime, but because he had failed to return and settle as he had promised. The notice caused the arrest. It was procured to be sent by the defendant. The

arrest was illegal; and as the jury, under a review of all the evidence, entertained the belief that the defendant was responsible for it, we can not interfere. In our opinion, no error of law was committed by the trial judge, of which the defendant can justly complain. The amount returned by the jury as damages ($300) was not, under the evidence, excessive. The judgment overruling the motion for a new trial is therefore

<div align="right">

*Affirmed. All the Justices concurring.*