### 27592. VLASS *v.* McCRARY *et al.*

DECIDED OCTOBER 12, 1939.

*Grover C. Powell, John Bolton, Ben T. Blackmon,* for plaintiff.

*J. C. Savage, C. S. Winn, Bond Almand, J. C. Murphy, Edwin L. Sterne,* for defendants.

SUTTON, J.   Victor Vlass sued C. E. McCrary and H. C. Newton, policemen of the City of Atlanta, for damages from false arrest and imprisonment.   The plaintiff contended that the defendants arrested him without a warrant, and caused him to be locked up; that upon being brought to trial before the recorder he was discharged; and that he suffered embarrassment and humiliation, as well as mental suffering, because of said arrest and proceedings therewith.   The defendants admitted that they arrested the plaintiff without a warrant, but defended on the ground that he was committing a crime in their presence when arrested.   The jury returned a verdict in favor of the defendants, and the exception is to the judgment overruling the plaintiff's motion for new trial.

The plaintiff testified: "I was walking along the street near Techwood when a car of policemen drew up to the curb and placed me under arrest and ordered me to get in the car. They had no warrant for my arrest.   I was placed under arrest by C. E. McCrary and H. C. Newton.   I asked them why I was placed under arrest.   They merely said 'You will find out later.'   On the way to the police station I requested the privilege of speaking to a business man, a friend of mine, whose place of business was on Marietta Street.   This request was refused.   At the police station, at the instance of these officers, I was locked up without any charges

being made against me. Under the direction of these officers I was held and not allowed to communicate with any one. I was denied the privilege of calling my business associate at the restaurant where I am part owner. Neither was I permitted to call my attorney or any one else. At the time of my arrest and prior thereto I was conducting myself in a proper and orderly manner, being engaged in the work of preaching the gospel of the Kingdom of Jehovah God, which I do when I am not engaged in my secular work. I had just been calling upon a lady, which call was made at her request. Bond was provided for my release about 11 p. m. I work in a restaurant, and I am also a preacher. I go from house to house preaching the gospel. I do not wait to be invited to go to a house. I work in this manner: I go to a house and ring the door bell and preach the gospel to every one who comes to the door. When I was arrested I was many blocks away from my home and business. It was on Techwood Drive, and I had been to a house to preach the gospel, but I did not know the people who lived there. I had been to several homes in this neighborhood. I carried a little grip with me which had religious pamphlets and books in it. I was not selling these, but if any one wanted to give me some money that took a pamphlet or book I would take it. The office of Jehovah's Witnesses was on Peachtree Street. What money was given to me I turned over to them. I do not know what they do with it."

C. E. McCrary, one of the defendants, testified: "I am a police officer of the City of Atlanta. We had received several telephone calls from people in the neighborhood of Georgia Tech, of a man going from door to door selling books and pamphlets, and people complaining of being annoyed by him. Mr. Newton, my partner, and myself went out to Techwood Drive and saw a man answering the description of the one given to us in the complaints go into a house, ring the door bell, and talk to a lady. When he came from the house and started up the street, we stopped him, and he said that he was calling upon the people to preach the gospel and distribute Bible tracts. We told him that we were police officers, and he would have to go with us to the police station. In his grip he had books and pamphlets published by the Jehovah's Witnesses. We arrested him without a warrant and carried him to the police station and turned him over to a lieutenant. Charges were made

against him, and he was required to make a $500 bond." H. C. Newton testified to the same effect. T. J. Crouch testified: "I am an attorney and assistant city investigator. I represented the city in the recorder's court on the trial of Victor Vlass. He was tried for violating the city license laws by failing to obtain a business license to canvass or sell books. The city had one witness whom I understood would testify to the fact that the plaintiff had offered to sell him a pamphlet or book. When this witness was unable to testify to this fact, and there was no evidence of sales by the plaintiff, I requested the recorder to dismiss the case, which was done."

The Code, § 27-207, provides: "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." But "Whoever arrests or imprisons a person without a warrant is guilty of a tort, unless he can justify under some of the exceptions in which arrest and imprisonment without a warrant are permitted by law; and the burden of proving the existence of the facts raising the exception is upon the person making the arrest or inflicting the imprisonment." *Piedmont Hotel Co.* v. *Henderson,* 9 *Ga. App.* 672 (3) (72 S. E. 51); *Hines* v. *Adams,* 27 *Ga. App.* 157 (107 S. E. 618). It was contended by the defendants that they had received telephone calls from people in the neighborhood of Georgia Tech that a man was going from door to door selling books and pamphlets and annoying them, and that, while they arrested the plaintiff without a warrant, they had probable cause and acted in good faith. Where the arrest is without a warrant and is illegal, no amount of good faith or probable cause will excuse the defendants. *King* v. *State,* 6 *Ga. App.* 332 (64 S. E. 1001); *Holliday* v. *Coleman,* 12 *Ga. App.* 779, 780 (78 S. E. 482). It clearly appears from the evidence that the plaintiff, when arrested by the defendants, was walking along a public street in Atlanta, and that he was not violating any law or city ordinance at that time, nor had he been doing so. The plaintiff was tried for violating the city license law by failing to obtain a business license to canvass or sell books. There was no evidence at all that the plaintiff violated such ordinance; but had there been, this would not have sub-

jected him to arrest and imprisonment therefor, he being a minister of the gospel, as was held in *Thomas* v. *Atlanta,* 59 *Ga. App.* 520 (1 S. E. 2d, 598). It was said in *Thomas* v. *State,* 91 *Ga.* 204, 206 (18 S. E. 305): "No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that as a general rule the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public officer. Only three exceptions to this rule are recognized by the Code. See section 4723 [Code of 1933, § 27-207]. The first is, where an offense is committed in the officer's presence; the second, where the offender is endeavoring to escape; and the third, where from other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Where an arrest for a past offense is intended, and there is no present emergency, no want of time or opportunity for obtaining a warrant, why should a policeman be allowed to dispense with a warrant when other officers of the law could not? Any information as to the commission of an offense which would serve as a reasonable basis for making an arrest would serve for suing out a warrant." To the same effect see *Gordon* v. *Hogan,* 114 *Ga.* 354 (40 S. E. 229).

"False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty." Code, § 105-901. The only essential elements of a right of action for damages to the person so detained are the detention and its unlawfulness. Malice and the want of probable cause need not be shown. *Westberry* v. *Clanton,* 136 *Ga.* 795 (3) (72 S. E. 238); *Wyatt* v. *Baker,* 41 *Ga. App.* 750, 752 (154 S. E. 816); *Duckett* v. *Ozmer,* 48 *Ga. App.* 41 (172 S. E. 118). The testimony put upon the defendants the burden of showing that the arrest of the plaintiff by them and their acts towards him in connection therewith were authorized by law. They failed to carry this burden. They arrested him without a warrant, and he was committing no offense when they did so, as they contend he was, and undertook to justify on that ground. Under the law and the evidence the court erred in overruling the plaintiff's motion for new trial.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*