## 28182. HUMPHREY v. THE STATE.

PER CURIAM. This case was transferred to this court from the Court of Appeals of Georgia because of a constitutional challenge to a a Georgia statute. The appeal seeks review of several pre-trial rulings made in the Superior Court of Houston County following indictment by a grand jury in that county of the appellant for the offense of bribery. A second indictment also charges appellant, in one count, with the offense of carrying a concealed weapon; and in a second count, with the offense of carrying a pistol without a license. The appellant made two motions to suppress evidence, filed two pleas in abatement, numerous demurrers to the indictments and also made several written constitutional challenges to the Georgia Pre-Sentence Hearing Act, all of which were overruled by the trial court and are the subject of this appeal.

The trial court held an evidentiary hearing on appellant's motions to suppress evidence, and a transcript of the evidence at that hearing is included in the record filed in this court. The evidence adduced on the motions to suppress revealed the following: on January 9, 1973, two agents from the Georgia Department of Investigation were directed to report to the Mayor of Warner Robins, Georgia, to investigate alleged illicit activities involving

a councilman of that municipality. The two agents arrived at the mayor's office on the morning of January 10, 1973, and immediately met with the mayor of the municipality and Councilman Steve Morgan. At that meeting, Councilman Morgan described to the agents two encounters that had allegedly taken place with appellant who was also a councilman of the municipality, during which encounters the appellant had indicated his intention to solicit money from a developer, Charles McGlamry, in return for appellant's vote as a councilman to approve a water and sewer services expansion project of the municipality. The agents were told the developer had been approached for a "pay-off" by appellant through a Mr. Walter Whiting. Following this meeting, the D. O. I. Agents met with the developer and Mr. Whiting at approximately 3 p. m. on the afternoon of January 10, 1973, and confirmed appellant's solicitation through Mr. Whiting of a pay-off. The agents then met again with the mayor and Councilman Morgan and asked these two officials to pretend to go along with appellant in further dealings with him. Pursuant to this plan, Councilman Morgan called the appellant and set up a meeting with him at Councilman Morgan's office. This meeting occurred at approximately 7:30 p. m. on January 10, 1973. At that meeting, with Councilman Morgan's consent, D. O. I. Agents recorded a face-to-face conversation between Councilman Morgan and the appellant through the use of a tape recorder which had been placed secretly in Councilman Morgan's office. After the appellant left that meeting, the D. O. I. Agents listened to the tape of the conversation between Councilman Morgan and the appellant. The tape contains numerous statements tending to indicate appellant's involvement in a pay-off solicitation from the developer. It reflects that during the course of the conversation appellant discussed with Councilman Morgan a specific price for the pay-off in connection with the water and sewer project, which price Councilman Morgan was to convey to the contractor following the conversation. At approximately 8 o'clock that same evening, the D. O. I. Agents contacted the Sheriff of Houston County to secure his co-operation and revealed to him the details of their investigation. Shortly thereafter, Councilman Morgan, in pursuance of the plan he and appellant had agreed upon, contacted the developer, Charles McGlamry, to set up the pay-off. The developer, who had also been made privy to the plan of the D. O. I. Agents, agreed to put up

approximately $1,600. Councilman Morgan revealed this to the law officers and told them the pay-off would be made at the developer's office. The agents and the sheriff, together with other officers, went to the developer's office, hid themselves, planted a tape recorder and awaited appellant's arrival. Appellant came to the developer's office but immediately asked him to go for a ride and the two men were gone for approximately a half-hour. Upon returning, the developer, Mr. McGlamry, informed the officers that no money had been transferred but that the pay-off would take place at Councilman Morgan's office. The officers then returned to Councilman Morgan's office. Subsequently, Councilman Morgan met with the developer, McGlamry, and received from him $1,580. Thereafter, Councilman Morgan returned to his office and met with the law enforcement officers. The officers then marked the money and Councilman Morgan telephoned the appellant to tell him the money was in hand, and appellant instructed Councilman Morgan to bring half of it to his office. Councilman Morgan did this, and when he left appellant's office the law officers immediately entered the office and arrested the appellant for bribery. Upon the arrest of appellant, the officers found the marked money which was on the floor under appellant's desk at his office and also found a pistol concealed in the rear pocket of appellant's trousers.

No warrants of any kind were obtained in this case for the arrest of the appellant or for the seized recording of the conversation between Councilman Morgan and appellant or for the seizure of the marked money and the pistol from appellant's possession at the time of his arrest. Testimony was also adduced, at the evidentiary hearing on the motions to suppress, showing that the situs of appellant's arrest was an office which he used located directly behind the sheriff's office and that a justice of the peace was present in the sheriff's office that same evening between 9:30 and 10:00 p.m. The justice of the peace testified at the evidentiary hearing that his daily custom was to arrive at the sheriff's office at approximately 6 p.m. each day for his hearings, after which he usually ate supper and then on many days returned to the sheriff's office at night for conversation and company since he was a bachelor. The justice of the peace further testified that his home was only a five-minute drive from the sheriff's office.

## I.
## Motion to Suppress Evidence Seized at the Time of Appellant's Arrest.

The basic question presented in appellant's first enumeration of error is whether the search of appellant in his office and the seizure of the alleged bribery money and pistol were legal. Under Georgia law (Code Ann. § 27-301) searches and seizures without warrants are authorized when made as an incident to a lawful arrest. The central point determinative of the search of appellant without a warrant is whether appellant's arrest by the officers was a legal arrest since it was made without a warrant. If the arrest were lawful, the search was lawful. If the arrest were illegal, the search was unlawful and the property seized as a result of it should have been suppressed as evidence by the trial court.

Code § 27-207 provides: "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant."

As we have seen, Georgia law plainly restricts arrests without a warrant and the statute authorizes it to be done only in three instances. Thus, the question we face is whether the arrest in this case can logically fit into any of the three categories or exceptions authorized by the statute. This arrest was made after a city councilman, who was working with the law enforcement officers in accordance with a pre-arranged plan, had transferred the alleged bribe money to appellant. It is clear that the arresting officers were not dealing with a situation where the appellant was endeavoring to escape. He was arrested in his office which was surrounded by law enforcement officers and there was not even an attempt to escape made by the appellant. Additionally, it appears that the officers had reliable testimony available to them, on the afternoon of the very day on which the arrest was made that evening, and also had in their possession an incriminating recording of appellant's conversation with councilman Morgan, that would authorize the issuance of a warrant for solicitation. A justice of the peace was, on that same night, available in the immediate vicinity; and, yet, no effort was made by the officers to secure a warrant although the arrest was not made until a later hour of that evening. Consequently, it does not appear that a magistrate was unavailable to issue a warrant or that the appellant was endeavoring to escape. The only possible category under which the arrest might be justified without a warrant is by that provision in the statute which

authorizes an officer to make an arrest, "if the offense is committed in his presence." "A crime is committed in the presence of an officer, if he sees it committed, or by the exercise of any of his senses he has knowledge, together with what he sees, that a crime is being committed by the person sought to be arrested." *Howell v. State,* 162 Ga. 14 (6c) (134 SE 59); *Phelps v. State,* 106 Ga. App. 132 (126 SE2d 429). See also *Ramsey v. State,* 92 Ga. 53 (17 SE 613); *Porter v. State,* 124 Ga. 297, 306 (52 SE 283, 2 LRA (NS) 730); and *Davidson v. State,* 125 Ga. App. 502 (188 SE2d 124). The record before us discloses these law enforcement officers had sufficient personal knowledge of the acceptance of the bribe to justify their arrest of appellant without a warrant. Therefore, we conclude that under Georgia law the arrest was legal without a warrant and the exclusionary rule of Code Ann. § 27-313 is not applicable to the evidence seized incident to that arrest.

## II.
### Pleas in Abatement.

Appellant argues next the trial court erred in overruling his pleas in abatement to the indictment charging him with bribery. As an elected councilman of the City of Warner Robins, appellant contends he was a "State official" within the meaning of Code Ann. § 40-1617 and entitled to be served with a copy of the proposed indictment, entitled to appear before the grand jury and also entitled to have the Attorney General of Georgia notified of the proceedings. Under Code Ann. § 89-9907, "Any ordinary, member of any board of commissioners, county judge, or justice of the peace" shall be guilty of a misdemeanor for committing specified abuses of his office. Under Code Ann. § 89-9908, a proposed indictment, presentment or accusation under § 89-9907 must be served upon the accused and the accused shall have the right to make a statement before the grand jury. The rights provided to the county officials described in § 89-9908 are extended, under Code Ann. § 40-1617 to any State official before an indictment "charging him with misfeasance or malfeasance in office shall be laid before a grand jury . . . and the Attorney General of Georgia shall be notified of such contemplated action . . ."

A reading of these statutes discloses that a councilman of a municipality in Georgia is simply not one of the officials covered by the statutes. Section 89-9908 covers county officials, whereas

§ 40-1617 relates only to "State officials." The appellant was neither a county official nor a State official, and the good argument made that the protection of these statutes should be extended to councilmen of municipalities is misdirected since we are duty bound to apply the plain provisions of the statutes as written and not to enlarge their protection by extending them to cover officials who are not described therein. Only the General Assembly of Georgia is authorized to extend the coverage of these statutes to city councilmen. For cases illustrative of the coverage of the statutes, see *Fancher v. State,* 113 Ga. App. 195 (147 SE2d 463), and *Jones v. Mills,* 216 Ga. 616 (118 SE2d 484).

### III.
### Demurrers to the Bribery Indictment.

We have reviewed the appellant's demurrers to the bribery indictment which were overruled by the trial court. They complain variously of disjunctive allegations, variance between the language of the indictment and the statute, and specified vagueness in the provisions of the indictment. The bribery indictment reads as follows: "The Grand Jurors, . . . charge and accuse Jack Humphrey . . . with the offense of bribery for that the said accused, on the 10th day of January, 1973, in the State and County aforesaid, did then and there commit the offense of bribery in that the said accused, being an elected and active member of the City Council of the City of Warner Robins, Georgia, did, while acting as a city councilman for and on behalf of said political subdivision, solicit and receive from one Charles McGlamry a bribe, benefit, reward or consideration to which the said accused was not entitled, said bribe, benefit, reward or consideration having been received by said accused for the purpose of influencing him in the performance of his duties relating to the function of his office."

We believe the trial court properly overruled these demurrers. The indictment is basically couched in the terms of the statute and adequately puts the defendant on notice that he is accused of the crime of bribery. It alleges a particular date and person from whom the alleged bribe was received for the purpose of influencing appellant in the performance of his duties as a councilman of the City of Warner Robins. This meets the test of the law and is sufficient. See *Henderson v. State,* 113 Ga. 1148 (39 SE 446); *Wellborn v. State,* 78 Ga. App. 520 (51 SE2d 588); *Saunders v. State,* 43 Ga. App. 59, 60 (152 SE 433); *Dowda v. State,* 74 Ga. 12; and *Sloan v. State,* 68 Ga. App. 92 (22 SE2d 333). No

error is shown by the enumerations of error complaining the trial court overruled the demurrers to this indictment for bribery.

### IV.
### Demurrers to the Misdemeanors Indictment.

Appellant asserts the two-count indictment, charging him with carrying a concealed weapon and carrying a pistol without a license, is subject to the demurrers interposed thereto in the trial court. *Cosper v. State,* 13 Ga. App. 301 (79 SE 94), is relied upon to support appellant's contention that the present indictment is defective because it does not allege criminal intent in charging him with carrying a pistol without a license. The holding in *Cosper* is that a boy who found a pistol and carried it home for safe-keeping for its rightful owner did not have the intent to carry a pistol without a license. However, as pointed out in that case, the intent to carry a pistol without a license is inferred from the act itself, but this inference was there rebutted by the particular facts of that case. The present indictment charges this offense in the language of the statute and alleges it was committed "unlawfully," from which allegation the criminal intent is necessarily inferred. See *York v. State,* 42 Ga. App. 453, 461 (156 SE 733); and *Shehany v. Lowry,* 170 Ga. 70 (152 SE 114).

The second ground of demurrer challenged the indictment for failure to identify a particular pistol. This demurrer is without merit since it is not necessary to allege a specific type of pistol in order to put the defendant on notice of the elements of the offenses charged in this indictment. We find no error here.

### V.
### Constitutional Challenges to Trial Under Pre-Sentence Hearing Act (Code Ann. § 27-2534).

Appellant makes several constitutional challenges to the Georgia Pre-Sentence Hearing Act (Ga. L. 1970, p. 949, as amended by Ga. L. 1971, p. 902). Assuming appellant has standing to assert these challenges prior to trial, we find them to be without merit. This court has previously upheld the constitutionality of this law in *McKenzie v. State,* 231 Ga. 513 (202 SE2d 417), and that decision dealt with substantially the same issues raised in this appeal. One additional attack made here that was not considered in the *McKenzie* case is appellant's contention that the body of the Act contains matter different from that expressed in the caption. Appellant argues the caption refers to "felonies not

punishable by life" while the body of the Act deals with "all felonies." Our reading of the Act convinces us that the caption plainly does not indicate the Act deals only with "felonies not punishable by life imprisonment" but, on the contrary the quoted phrase is used in reference to an Act that repealed an Act amended by this statute. See Ga. L. 1970, pp. 949, 950. There is no merit in this enumeration of error and the trial court correctly overruled appellant's objections thereto.

VI.

Motion to Suppress the Recorded Conversation Between Appellant and Councilman Morgan.

We deal finally with appellant's argument that the face-to-face conversation between appellant and Councilman Morgan, which was recorded with the latter's consent but without the knowledge and consent of appellant, should have been suppressed as evidence by the trial court.

This recording must be scrutinized under the provisions of our Code applicable to such recordation. Pertinent parts of § 26-3001, read as follows: "It shall be unlawful for: (a) any person in a clandestine manner to intentionally overhear, transmit, or record, or attempt to overhear, transmit or record the private conversation of another which shall originate in any private place; . . . (d) any person to intentionally and secretly intercept by the use of any device, instrument, or apparatus the contents of a message sent by telephone, telegraph, letter or by any other means of private communication."

Code Ann. § 26-3006 sets forth as exceptions to the above rules the following: "Nothing in § 26-3001 shall prohibit the interception, recording and divulging of a message sent by telephone, telegraph, letter or any other means or communication . . . in those instances wherein the message shall be initiated or instigated by a person and the message shall constitute the commission of a crime or is directly in the furtherance of a crime, provided at least one party thereto shall consent."

Appellant contends that the provisions of § 26-3006 do not include face-to-face conversations, and that the use of the words "or other means of communication" in this section indicate other means similar to the means of "telephone, telegraph, [or] letter." We do not interpret this section to require any distinction between face-to-face conversation and those communications which are transmitted less directly. A careful review of these provisions of our law convinces us that face-to-face conversations were

intended by the legislature to be included in the consent exceptions contained in § 26-3006. The conversation recorded here was "in furtherance of a crime" and, as it was done with the consent of one of the parties, it met the requirement of the statute authorizing it to be done in a private place and may be used as evidence upon proof of its authenticity. See the concurring opinion of Judge Evans in *Cross v. State,* 128 Ga. App. 837, 841 (198 SE2d 338).

Conclusion.

We have determined from our study of the record and briefs in this case that appellant's enumerations of error are without merit.

*Judgment affirmed. All the Justices concur, except Ingram, J., who dissents from Division I of the opinion and from the judgment rendered.*

SUBMITTED AUGUST 10, 1973 — DECIDED MARCH 8, 1974 — REHEARING DENIED MARCH 21, 1974.

*Adams, O'Neal, Hemingway & Kaplan, Manley F. Brown, H. T. O'Neal, Jr.,* for appellant.

*Joneal Lee, District Attorney,* for appellee.

INGRAM, Justice, dissenting. I respectfully dissent to Division I of the court's opinion and to the judgment affirming the overruling of the motion to suppress the evidence seized at the time of appellant's arrest.

These officers certainly had good probable cause to conclude that a crime had been committed and that the appellant should be arrested. However, I do not read the record to authorize a conclusion that the crime was committed "in the presence" of the officers. They were given the signal by Councilman Morgan, as he came out of appellant's office, that informed them the alleged bribe money had been accepted by appellant. But the officers did not see or hear the commission of the crime and they were not present in appellant's office when he allegedly accepted the bribe money.

The facts of this case do not bring it within any of the three exceptions from which the statute authorizes an arrest without a warrant. Therefore, I must stand with Chief Justice Bleckley's position in *Thomas v. State,* 91 Ga. 204, 206 (18 SE 305) that: "No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that as a general rule the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public

officer. Only three exceptions to this rule are recognized by the Code. See Section 4723. The first is, where an offense is committed in the officer's presence; the second, where the offender is endeavoring to escape; and the third, where from other cause there is likely to be a failure of justice for want of an officer to issue a warrant. Where an arrest for a past offense is intended, and there is no present emergency, no want of time or opportunity for obtaining a warrant, why should a policeman be allowed to dispense with a warrant when other officers of the law could not? Any information as to the commission of an offense which would serve as a reasonable basis for making an arrest, would serve for suing out a warrant."

For additional authority, see *Vlass v. McCrary,* 60 Ga. App. 744 (5 SE2d 63); and *Ronemous v. State,* 87 Ga. App. 588, 591 (74 SE2d 676).

Since the appellant's arrest without a warrant was unlawful, it follows that the evidence seized incident to that arrest must be suppressed.