## BROOKS v. THE STATE.

1. If a policeman at a late hour of the night hear a pistol-shot within two blocks of his beat, and immediately thereafter discover a man running from the direction of the shot and towards him, he has a right to arrest him without a warrant. Where, under such circumstances, the officer attempts to make the arrest and is shot and killed by the person whom he is seeking to arrest, the offense is murder and not manslaughter; especially where the slayer has in fact fired the shot first heard and has thereby wounded another.

2. When a person without a warrant illegally arrests a witness in attendance upon a court, who has been examined but not discharged, it is not error for the judge, before the trial is concluded but out of the hearing of the jury, to try and punish such person for a contempt of court.

3. Grounds of a motion for a new trial not approved by the trial judge can not be considered by this court.

4. The evidence warranted the verdict, and there was no error in refusing a new trial.

Argued October 7,—Decided November 5, 1901.

Indictment for murder. Before Judge Falligant. Chatham superior court. March term, 1901.

*Twiggs & Oliver*, for plaintiff in error. *J. M. Terrell, attorney-general*, and *W. W. Osborne, solicitor-general*, contra.

SIMMONS, C. J. It appears from the record that Fender, a policeman in the City of Savannah, while on duty heard a pistol-shot two blocks from the street which he was patrolling. Immediately thereafter he saw a person running toward him from the direction in which the pistol had been fired. Fender was in the uniform of a policeman, and approached and attempted to arrest the runner, when he was shot and killed by that person. Brooks, the plaintiff in error, was subsequently arrested, and was indicted, tried, and convicted of the murder. There was considerable circumstantial evidence which tended to establish that Brooks was the person who shot the policeman, and the direct testimony of one witness to that effect. It was proved that Brooks had shot a man by the name of Burns two blocks away from where Fender was killed, and that immediately after shooting Burns, which was at about two o'clock in the morning, Brooks ran in the direction of Fender. Brooks was arrested a few minutes after Fender was shot. After conviction Brooks made a motion for a new trial. This was overruled, and he excepted.

1. One of the grounds of the motion for a new trial complains

that the trial judge erred in not giving in charge to the jury the
law of the offense of manslaughter. This ground does not allege
that there was any request that the judge should charge upon this
subject. This court does not look upon such complaints with
much favor. It is the duty of counsel in the trial of a case to as-
sist the court in arriving at correct conclusions in his charge.
Counsel ought not to sit by and allow the court to commit error
if by a proper request he could correct it. This practice upon the
part of counsel seems to be growing. Many motions for new trial
are full of these complaints,— the failure of the judge to charge
certain things which are merely incidental to the main questions
in the case. But, treating this ground as a refusal on the part of
the court to charge the law of manslaughter, was it error? Under
the facts of the case we think this was not error. The deceased
was a policeman in the City of Savannah, and therefore an officer
of the State. He was in the discharge of his duty, walking his
beat, at about two o'clock in the morning. He heard a pistol-shot.
Immediately thereafter he heard a person running toward him
from the direction in which he had heard the shot. He inter-
cepted the fugitive and attempted to arrest him, and was shot to
death. He was dressed in his policeman's uniform and was near
enough to an electric light for the slayer to see that he was a po-
liceman. The policeman, in our opinion, had the right to arrest
the fugitive without a warrant. Having heard the shot and seen
a person apparently fleeing from the place where the shot had been
fired, he had reasonable grounds to suspect that an offense against
the laws of the State or of the municipality had been committed,
and that the fugitive had committed it. The Penal Code, § 896,
provides that "An arrest may be made for a crime by an officer . .
without a warrant, if the offense is committed in his presence, or
the offender is endeavoring to escape, or for other cause there is
likely to be a failure of justice for want of an officer to issue a
warrant." While the policeman did not actually see the pistol
fired, yet he heard the report and immediately afterward heard
footsteps and saw Brooks running toward him. It is not neces-
sary that an officer should actually see the offense committed be-
fore he can arrest without a warrant. If he hears such a noise as
leads him reasonably to believe that an offense has been commit-
ted, the offense is, under the law, committed in his presence. See

*Ramsey* v. *State*, 92 *Ga.* 53, and cases cited.    Moreover it appears that the accused was running when he was intercepted by the officer.    He had committed an offense against the laws of the city and of the State, and was endeavoring to escape.    We say he was endeavoring to escape, because, when intercepted, he was running from the scene of the shooting.    At two or three o'clock in the morning there was no opportunity for the officer to obtain a warrant in time to arrest the fleeing offender.    Had he stopped the pursuit and gone to a magistrate to obtain a warrant, the offender would certainly have escaped for the time being, and possibly for good and all.    Under such circumstances the officer had a right to arrest, and the arrest, if made, would have been legal.    The accused had no right to resist a legal arrest, but should have submitted.    When an officer is shot and killed by one whom he is seeking legally to arrest, the offense is murder and not manslaughter.    All the cases and text-books, so far as we know, lay this down as the law.    It is especially true in a case like the present, where it appears that the fugitive had actually shot another and was running away from the place of the shooting.    It was, therefore, not error to fail or refuse to charge upon the subject of manslaughter in this case.

2.  Pending the trial of the accused, a witness by the name of Patterson was sought to be impeached by a record from the courts of South Carolina.    In order to show that he was the person referred to in such record, it was necessary that he should be identified by certain witnesses from South Carolina.    One of these appears to have been a sheriff of that State, who had obtained a requisition for Patterson from the Governor of South Carolina.    The Governor of this State, however, had never issued his warrant authorizing the arrest.    After Patterson had been examined he was excused, but not discharged from attendance upon the court.    As he left the court-room the South Carolina sheriff, without a warrant, arrested him.    When the attention of the judge was called to this matter, he sent the jury to a room upon an upper floor and tried the sheriff for contempt of court.    This action of the court is complained of in the motion for new trial.    It appears from the record that the jury did not and could not hear the trial for contempt.    Even if they heard, we do not see how it could have affected the rights of the accused any more than where the judge punishes, for

a contempt committed in his presence, any other person in attendance upon the court. It was argued here that the jury might have heard it and have come to the conclusion that the judge was in favor of Patterson and was protecting him when counsel had announced an intention to impeach him; but we think that the action of the judge can not be held to have had such a tendency. It is true that Patterson fled shortly after his release, but the record shows that the South Carolina witnesses saw and identified him fully before he fled, and that they testified as to his identity.

3. There were several other special grounds in the motion which were either not approved at all by the trial judge or so explained and modified by him as to make it obvious that there was no merit in them. Grounds not approved by the trial judge can not be considered by this court. Grounds in which, as originally made, there would seem to be error must be considered in connection with such explanations and modifications as the trial judge may make in approving them. Such explanations and modifications may and frequently do show that there was no error in the ruling of which complaint is made.

4. The theory of defense mainly relied upon here was that the accused was not the person who shot the policeman, and that the verdict was contrary to law and the evidence. We have carefully read and studied the evidence in the record, and have come to the conclusion that it was sufficient to authorize the verdict. The accused had shot Burns two blocks away from the policeman. The latter intercepted him and tried to arrest him, when he shot and killed the policeman. The attempted arrest and the shooting of the deceased policeman were testified to positively by the witness Patterson. Patterson did not assist the policeman or call any other officer at the time, because, he said, he did not know at the time that the deceased was wounded, as he, when shot, did not fall but started in pursuit of the accused. It appears that the homicide was reported in the morning papers, and that Patterson, when he had seen this, reported what he had seen to one of the policemen of the city. An attempt was made to impeach Patterson, but his credibility was for the jury to determine. Besides Patterson's evidence, there was considerable circumstantial evidence tending to show the guilt of the accused. If the State's evidence was true, and the jury seem to have believed it, the accused was guilty. On the whole we think

that the trial judge did not abuse his discretion in refusing a new trial.    *Judgment affirmed.    All the Justices concurring.*