· PORTER *v.* THE STATE.

1. Penal Code, §896, is applicable alike to State and municipal arresting officers. If an offender against a municipal ordinance is endeavoring to escape from justice, the marshal or policeman may lawfully arrest him without a warrant, whilst he is so endeavoring to escape. But where it is not shown that the person attempted to be arrested by the marshal had violated any ordinance of the town, other than by proof of a verbal complaint made to the officer by another that the person sought to be arrested had created a disturbance, and he eluded the officer to prevent an illegal arrest, his avoidance of the officer by flight is not such an endeavor to escape as would justify his arrest without a warrant.

2. The offense which one commits who fires a gun at an arresting officer attempting an illegal arrest, and misses him, when such resistance is unnecessary to defend himself from the illegal arrest, is that of unlawfully shooting at another not in his own defense.

3. The ordinances of the town, defining disorderly conduct and prescribing the duties of the marshal, were relevant as showing the authority of the marshal to make arrests for misconduct such as that which he was informed the defendant was guilty of.

Argued July 10,—Decided November 20, 1905.

Indictment for assault with intent to murder. Before Judge Littlejohn. Stewart superior court. May 24, 1905.

*J. B. Hudson, G. Y. Harrell,* and *B. F. Harrell,* for plaintiff in error.

*F. A. Hooper, solicitor-general,* and *Graham Forrester,* contra.

EVANS, J. Oscar Porter was convicted of the offense of assault with intent to murder. It appeared on the trial that the marshal of the town of Lumpkin was approached by a negro, John Anderson, upon the public square of the town, and requested to arrest the defendant upon a charge of disorderly conduct. The defendant was at the time but a short distance from the marshal, and had full opportunity to observe the marshal and Anderson in conversation. After listening to Anderson's complaint, the marshal followed the defendant, who was walking down the street. The marshal quickened his pace, and the defendant also walked faster, when the marshal called him by name and told him to stop; whereupon the defendant ran in the direction of his home and disappeared from the marshal's view. The officer, some half or three quarters of an hour afterwards, discovered the defendant on the public square sitting upon some piping, with a gun resting upon his lap. The officer attempted to approach him unobserved, for the purpose of making an arrest upon the complaint which had been made to him. When the marshal got within ten feet of the defendant, the latter suddenly sprang up, fired at the marshal, and then ran off. He was afterwards captured in another county. The marshal was in uniform and carried a club, but made no attempt to use it before he was fired upon. The marshal had no warrant for the defendant's arrest. No ordinance of the town was violated by the defendant in the officer's presence. At the time of the occurrence, the mayor of the town "was at home sick." An ordinance of the town defining disorderly conduct and providing for the punishment of one guilty thereof was introduced in evidence by the State, and also an ordinance defining the duties of the police force. The defendant in his statement contended that the shooting was accidental. In his motion for a new trial the defendant complains that the court erred in admitting in evidence the above-mentioned ordinances of the town, and also in charging the jury, and in refusing a certain request to charge. The motion was overruled, and error is assigned on the judgment denying the defendant a new trial.

1. The third ground of the amended motion assails the instruction of the court therein excepted to, as contradictory and as not

applicable to the facts of the case, and as being objectionable because it assumes that a marshal of a town may legally arrest without a warrant an offender against a municipal ordinance. The charge excepted to was as follows: "A marshal of a town has the right to arrest a person for the violation of the ordinances of the town, without any warrant for the purpose of doing so. It is not required that a city marshal or policeman shall have warrants to make such arrests; or, in other words, if they make the arrest without a warrant, that would not be an illegal arrest. While that is true, an officer of a city, a marshal, or a policeman, would not be authorized, or rather it would be an illegal arrest or attempt to arrest for an offense not committed in the presence of the officer, unless there was some other reason for which the law would authorize an arrest to be made or an attempt to be made without a warrant or a process of law for making such arrest. While that is true, if an ordinance of a city or town be violated by a person, and it should be reported to an officer that such ordinance had been violated, or that there had been a violation of a certain ordinance by a person, and such person should be attempting to flee, make his escape, then such officer would have the right to proceed to make such arrest without a warrant; and if in doing so the person so fleeing resists arrest, and with a deadly weapon attempt to take the officer's life, he would be guilty of an assault with intent to commit murder." It is evident from an analysis of this instruction that the court meant that the power of arrest without a warrant could be lawfully exercised by a marshal where the offender was endeavoring to escape. The language used in the beginning implied an unqualified power of arrest without a warrant, and might have misled the jury. Construing the whole charge complained of as an instruction that an officer without a warrant may arrest an offender who is endeavoring to escape, we think it was unauthorized by the facts. A reference to the statement of facts will disclose that the defendant, at the time of the shooting, was not attempting to escape, nor was he at the time trying to elude arrest by flight. On the contrary, what the defendant then did was to resist arrest. If the marshal could lawfully arrest without a warrant, the defendant could not legally interfere with the officer in the discharge of his duty.

The trial judge was evidently of the opinion that under the circumstances detailed by the marshal, upon whose testimony the State

relied for a conviction, he was justified in attempting to arrest the defendant without a warrant, inasmuch as the defendant had taken to flight when first approached by the officer. Exception is taken to the following charge upon this subject: "Now, if you believe from the facts of this case that this defendant, Oscar Porter, had violated some of the penal ordinances of the town of Lumpkin, and that that fact was made known to the city marshal, Mr. Bell, and if he was then in the presence of, or in sight of, the defendant, and the defendant attempted to flee, evade an arrest by escape, the city marshal would have the right to proceed to make that arrest without waiting to get any due process of law for the purpose of doing so; and if in his endeavor to make that arrest under those circumstances, without any warrant, the defendant should resist him and attempt to take his life as charged in the indictment, he would be without justification in doing so, and the jury would be authorized to so find, a verdict finding the defendant guilty." The complaint made of this charge is that it did not correctly state the law applicable to the case, in that it amounted to an instruction that the "marshal could arrest the defendant upon mere request or demand, without a warrant or process," provided the defendant saw the party report him or demand his arrest for a past offense, and that if the defendant attempted to prevent such arrest by flight, his mere effort to prevent such arrest would authorize his subsequent arrest; that the charge assumed there had been a violation of a municipal ordinance by the defendant, although there was no evidence that this was true; and that the charge excluded from the consideration of the jury the question whether or not there was any sufficient legal excuse for not obtaining a warrant before undertaking to make the arrest. Other instructions to the jury are excepted to on the ground that they likewise presented to the jury a theory of the case not authorized by the evidence and the law applicable thereto. These exceptions to the charge of the court seem to call for a somewhat extended review of the law relating to the right of a municipal peace officer to arrest, without warrant, a person who may have committed a violation of a municipal ordinance, not in the immediate or constructive presence of the officer.

At common law, certain officers were authorized to arrest without warrant under particular circumstances. Hale says: "There are certain officers and ministers of public justice that virtute officii are

empowered by law to arrest felons, or those that are suspected of felony, and that before conviction, and also before indictment. And these are under a greater protection of the law in execution of this part of their office, upon these two accounts: (1) Because they are persons more eminently trusted by the law, as in many other acts incident to their office, so in this; (2) because they are by law punishable, if they neglect their duty in it. And therefore it is all the reason that can be that they should have the greatest protection and encouragement in the due execution of their office, since their actings herein are not arbitrary, but necessary duties, not permissions, and under severe punishments in their neglect thereof. And hence it is that these officers that are thus intrusted may without any other warrant, but from themselves, arrest felons and those that are probably suspected of felonies; and if they be assaulted and killed in the execution of their office, it is murder. And, on the other side, if persons that are pursued by these officers for felony or the just suspicion thereof, nay for breach of the peace or just suspicion thereof, as night walkers or persons unduly armed, shall not yield themselves to these officers, but shall either resist or fly before they are apprehended, or, being apprehended, shall rescue themselves and resist or fly, so that they can not be otherwise apprehended, and are upon necessity slain therein, because they can not be otherwise taken, it is no felony in these officers or their assistants that upon inevitable necessity kill them, though possibly the parties killed are innocent, for by their resistance against the authority of the king in his officers they draw their own blood upon themselves. The officers that I herein principally intend are: (1) Justices of the peace; (2) sheriffs; (3) coroners; (4) constables; (5) watchmen. And when I mention these I also include all that come to their aid and assistance; for every man in such cases is bound to be aiding and assisting these officers, upon their charge and summons, in preserving the peace and apprehending of malefactors, especially felons." 2 Hale's P. C. 85-6. The term "policeman" has been held to be the legal equivalent of "watchman" at common law, with respect to the power to arrest without a warrant. State *v.* Evans (Mo.), 61 S. W. 590. Section 896 of our Penal Code is a codification of the common law on the subject of arrest, with perhaps a slight enlargement of the power of arrest. That section reads as follows: "An arrest may be made for a crime by an officer, either

under a warrant, or without a warrant if the offense is committed in his presence, or if the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." In *Thomas* v. *State,* 91 *Ga.* 206, and in *Brooks* v. *State,* 114 *Ga.* 6, it was held that this section was applicable to municipal peace officers, such as a policeman or town marshal. The law is very jealous of the liberty of the citizen. In proportion as the offense is less serious, the greater the formality prescribed for the exercise of the power to deprive the citizen of his liberty. If the offense be a felony, an arrest may be made by a private person or an officer, without a warrant, if the citizen suspected of the felony is endeavoring to escape; but if the offense be a misdemeanor, then before even an officer will be authorized to arrest, he must bring himself within the exception provided in the Penal Code, § 896. It has been held that the prosecution of one charged with the violation of a municipal ordinance is not a "criminal case," within the meaning of that clause of our constitution which preserves the right of trial by jury. *Williams* v. *City Council,* 4 *Ga.* 509; *Floyd* v. *Commissioners,* 14 *Ga.* 354. On the other hand, such a prosecution has been held to be a "criminal case," within the meaning of the statute providing within what time a bill of exceptions must be tendered and signed. *Barnett* v. *Atlanta,* 109 *Ga.* 166. But whether the violation of a municipal ordinance be a crime in the usual sense of the term, or merely an offense against the public, to be known by some more appropriate name, the citizen can not be deprived of his liberty because of his infraction of the ordinance, unless at common law he was liable to arrest or the power to arrest is given by statute. Under the citation from Hale, the power to arrest for such a minor offense, without a warrant, did not exist at common law. Therefore it must depend upon statute; and there is no statute, of which we are aware, authorizing a municipal police officer to make an arrest save in compliance with the terms of the above-cited section of our Penal Code. As to the right to arrest without a warrant, under the common law or the charter power conferred upon a municipality, see Voorhees on Arrest, § 112 et seq., and McQuillin on Munic. Ord. § 306. That the infraction of a municipal ordinance may not amount to either a felony or a misdemeanor, but is merely to be regarded as a violation of a municipal precept touching appropriate and becoming conduct

on the part of the citizen, does not dispense with the requirements of the law with regard to issuing a warrant for his apprehension. That he has committed a very slight offense affords no reason for treating him as a criminal who has forfeited his personal right of liberty and who may therefore be arrested without any formality whatsoever. The suggestion may be made that it is inconvenient or impracticable to procure a warrant before making the arrest of such an offender, especially in a large city where there would be difficulty in ascertaining his whereabouts and serving a warrant upon him. But the obvious reply to this suggestion is that our General Assembly has not as yet seen fit to authorize police officers to deprive a citizen of his liberty at their own time and pleasure upon bare suspicion or upon mere information that he has been guilty of the violation of an ordinance of the municipality. Again, it may be said that, in incorporating certain towns and cities, no provision has been made by the legislature for the issuing of warrants for the apprehension of offenders against municipal ordinances. If this be true in point of fact, then the effect of such omission would be, not to abrogate the general law on the subject of arrest, or to deprive the citizen in any measure of his right of personal liberty, but to afford the municipality no means of bringing the offender to account other than those for which the general law makes provision. The courts can not undertake to supply the omissions of the legislative department of the State, but are bound to enforce the law as they find it.

So far as the town of Lumpkin is concerned, the somewhat recent act whereby it was granted a new charter unquestionably confers upon the mayor the power to issue warrants for the apprehension of persons charged with a violation of the ordinances of that town. Acts of 1902, p. 492, sec. 9. In *Williams* v. *Sewell*, 121 *Ga.* 665, this court held, that "A municipal charter which imposes upon the mayor the duty of seeing that the ordinances of the town are faithfully executed, and confers upon him jurisdiction to try all persons charged with violating such ordinances, authorizes the mayor to issue a warrant for the arrest for trial of one charged with the violation of an ordinance; and this is true notwithstanding the charter does not in express terms authorize the mayor to issue a warrant for such purpose." So, it would seem, there was not "likely to be a failure of justice for want of an officer to issue a

warrant," the mayor being in town, though "at home sick." That he was so incapacitated by his illness as not to be able, on the afternoon of the arrest or upon the following day, to attend to official business does not appear. The name and identity of the accused were known; haste was not imperative. Certain it is that the arresting officer did not undertake to make the arrest because of the impracticability of getting the mayor to issue a warrant; because he did not pretend that he based his right to apprehend the defendant upon any such ground. The case appears to have been tried upon the theory that the officer had a right, without a warrant, to arrest the defendant as an offender who was seeking to escape from justice, not one who had merely evaded an illegal arrest in the first instance and who had afterwards resisted with unlawful force a renewal of the officer's unauthorized attempt to place him in custody. The charge of the court was not adjusted to the facts brought to light by the evidence. So far as appears, the defendant never manifested any intention of leaving the community or going beyond the corporate limits of the town. He refused to stop when ordered by the marshal to do so, and evaded the attempted illegal arrest by running off in the direction of his home. Some half or three-quarters of an hour afterwards, he again appeared on the public square, thereby negativing any impression the marshal may have had that he intended to become a fugitive from justice. When first approached by the marshal, the defendant could either have resisted the unlawful arrest by the use of all necessary force, or have avoided the attempted arrest by running away from the officer. *Thomas* v. *State,* 91 *Ga.* 205-6. He chose the latter alternative and successfully eluded arrest. After arming himself with a gun, he reappeared on the public square, with what intention does not affirmatively appear. He was not an "escape," nor was he making any attempt then to escape, but was quietly sitting down and conversing with some other negroes. When the officer suddenly confronted him, he immediately shot at but missed him. He may have intended when he returned with his gun to resist any renewed attempt to arrest him, but he indicated no intention to become a fugitive from justice, until he committed the grave offense of unlawfully shooting at the officer.

The court was requested to charge the jury that "every man, however guilty, has the right to shun an illegal arrest by flight; and

when an attempted arrest is illegal and the defendant prevents such illegal arrest by flight, the exercise of this right of flight should not and would not subject him to be arrested as a fugitive endeavoring to escape." This request was pertinent to the case and should have been given; for the jury should have been instructed that the evasion of the illegal arrest, which the defendant accomplished by running away from the officer when first approached by him about sundown, did not render the defendant a fugitive from justice whom the officer might thereafter arrest without a warrant as an "escape" whenever and wherever the officer might find him. If one accused of a misdemeanor or a violation of a municipal ordinance may oppose an illegal arrest with commensurate resistance, or by flight, it would be begging the question to say that an evasion of an illegal arrest by flight would authorize his arrest as a fugitive endeavoring to escape.

In granting a new charter to the town of Lumpkin in 1902, the General Assembly provided that the mayor should "have control of the marshal and his deputies and of all special officers" appointed for any purpose, and that he might "cause the arrest and detention of all rioters and disorderly persons in said town before issuing his warrant therefor." Acts of 1902, p. 492. But the marshal was not clothed with any authority in the matter of arrest, in addition to that he might exercise under the general law, while not acting in concert with or under specific orders from the mayor. It is not to be presumed the General Assembly was unacquainted with the general law on the subject of arrest, or acted unadvisedly in ignorance of the local conditions in that town, when the above-mentioned provision was made with respect to the circumstances under which the formality of issuing a warrant could be dispensed with. We must be content with the scheme for bringing petty offenders to justice which the legislature has, in its wisdom, seen fit to adopt.

2. To slay an officer who is without authority of law to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid an illegal arrest, would be manslaughter, and not murder. *Croom* v. *State*, 85 *Ga.* 718; *Williford* v. *State*, 121 *Ga.* 176. While one who has committed a misdemeanor may use proportionate force in resistance to an illegal arrest, yet if the means employed to prevent his detention are disproportionate to the effort made to take him into custody, such disproportionate resistance is unlawful; and

20

if such unlawful resistance culminates in a homicide, the party seeking to avoid arrest is guilty of voluntary manslaughter. If he fires at the arresting officer with a gun and misses him, and such resistance is unnecessary to defend himself from an illegal arrest, the offense is no more than an unlawful shooting at another not in his defense, and does not amount to an assault with intent to murder. *Thomas* v. *State,* supra. From the evidence it appears that the marshal attempted no bodily harm in bringing about the arrest of the defendant, and that the defendant's firing at him with a deadly weapon was without excuse. The defendant claimed in his statement that the discharge of the gun was accidental. The marshal's testimony indicated that it was intentionally discharged at him. Accordingly, the case made out by the evidence was one of unlawfully shooting at another, while the defendant's statement presented the defense of accidental shooting. The verdict of the jury, finding the defendant guilty of the offense of assault with intent to murder, was wholly unauthorized.

3. The ordinances of the town, defining disorderly conduct and prescribing the duties of the marshal, were relevant as showing the authority of the marshal to make arrests for misconduct such as that he was informed the defendant was guilty of. But while the marshal had authority to make arrests for violations of the ordinances, he could not lawfully make an arrest without a warrant save under the circumstances enumerated in the code section above cited. The purpose of that section is to guard the citizen against summary apprehension for a petty offense not committed in the presence of the arresting officer, and with the commission of which he is not charged under oath by the person who makes complaint to the officer, when the circumstances are not such as to justify an arrest without first procuring a warrant.

*Judgment reversed. All the Justices concur, except Beck, J., not presiding.*

LUMPKIN, J. (with whom CANDLER, J., joins), concurring specially. I concur in the judgment granting a new trial in this case, but I am unable to concur in all of the reasoning on which this judgment is based. The charge of the presiding judge clearly contained one or more errors which necessitate the granting of a new trial. A patent error consisted in submitting to the jury for determination whether the defendant had in fact violated some of the

penal ordinances of the town of Lumpkin, when there was no evidence whatever that he had done so. The proof on this subject was merely that the marshal had been informed that such a violation had taken place.

Somewhat greater latitude is allowed in regard to arresting for a felony than for a misdemeanor, but I am not prepared to concur in the idea that greater formality is required in arresting violators of municipal ordinances than criminals under the State law. This is not directly stated to be the rule in the opinion of the majority, but the reasoning seems to lead to that result. The legislative intent appears to be that under some circumstances arrests for disorders may be made without a warrant. Thus in reference to towns and villages for which incorporation is provided in the Political Code, §683, it is declared (§705) that it shall be the duty of the mayor to see that the peace and good order of the town or village are preserved, and that persons and property therein are protected, and to this end he may cause the arrest or detention of all riotous and disorderly persons in the town or village, before issuing his warrant therefor. The charter of the town of Lumpkin contains a similar provision. The charter of Temple contains authority to the clerk to issue certain writs, including warrants, though not mentioned in *Williams* v. *Sewell,* 121 *Ga.* 665. See Acts 1901, p. 658, section 23. By the Penal Code, §902, conductors of passenger-trains are invested with powers of police officers while on duty, and authorized to detain persons guilty of disorderly conduct on the train, and have them delivered to the proper authorities for trial as soon as practicable. In *McRea* v. *Americus,* 59 *Ga.* 168, Bleckley, J., said: "Police ordinances are at once family rules on a large scale, and State laws on a small scale. . . In a city, we think, a man may fight in a way to violate an ordinance, without being guilty of an assault and battery." In *Queen* v. *Atlanta,* 59 *Ga.* 323, Jackson, J., said in a concurring opinion: "To hold a police court to strict pleading would be to destroy, almost if not altogether, its usefulness." See also *Johnson* v. *Americus,* 46 *Ga.* 80; *Floyd* v. *Eatonton,* 14 *Ga.* 354; *Williams* v. *Augusta,* 4 *Ga.* 509; *Hood* v. *Von Glahn,* 88 *Ga.* 414; *Littlejohn* v. *Stells,* 123 *Ga.* 427.

A policeman performs the duty of arresting both for offenses against the State and those against municipal ordinances. He partakes both of the nature of a constable, and a watchman at common

law, with such added powers as may result from legislation. As to the right to arrest without a warrant at common law, and as to night watchmen, see 4 Bl. Com. 292; 2 Hale's P. C. 98. The decisions cited from this State in the majority opinion arose in cases of arrests or offenses against the State; but if section 896 of the Penal Code is to be treated as applying to arrests by policemen or marshals for violations of municipal ordinances, and as impliedly requiring a warrant, that section authorizes such an arrest without a warrant "if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." A policeman under city ordinances is as much under the protection of the law in making an arrest as any public officer. *Johnson v. State,* 30 *Ga.* 426. The expression "in his presence" does not necessarily mean in his sight. In *Ramsey* v. *State,* 92 *Ga.* 53, it was held, that "An officer may arrest without warrant for wife-beating, if he arrives at the scene during the progress of or immediately after the beating, he being attracted thereto by the noise of the disturbance or the outcry of the woman." In *Brooks* v. *State,* 114 *Ga.* 6, it was held, that: "If a policeman at a late hour of the night hear a pistol shot within two blocks of his beat, and immediately thereafter discover a man running from the direction of the shot and towards him, he has a right to arrest him without a warrant." In *Harrell* v. *State,* 75 *Ga.* 842, it was held, that "Policemen ought to assist each other in arrests; and when one hails another to stop a man running to a bridge which carries him into another jurisdiction, it is the duty of that other to seize and arrest the fugitive." In *Thomas* v. *State,* 91 *Ga.* 204, supra, the evidence of the policeman was that he was called to arrest the accused by an old woman who kept a boarding house on the corner of Oak and Third streets in the city of Macon, whose name he did not know or had forgotten; that she stated to him that the accused had broken into her trunk and had taken $29 and a few cents, and a coat; that she described the accused, and said she wished the policeman to look out for him; and that this was about three hours after the property had been stolen. The court charged: "If you believe from the evidence that the officer had been notified to look out for him as a thief, and that evening he approached to arrest him, and the defendant fled before the officer drew the weapon and without endeavoring to attack the

defendant in any way, the defendant while fleeing and the officer
pursuing, he drew the pistol, fired upon him, and you believe the
pistol was a weapon likely to produce death, you would be author-
ized to convict him of assault with intent to murder." It was held,
that "This charge assumes that the facts enumerated would consti-
tute probable cause for making the arrest without a warrant,
whereas they might or might not, and whether they would or would
not would be for determination by the jury in the light of all the
circumstances attending the case, including the facilities for ob-
taining a warrant according to the spirit of section 4723 of the
code." Thus where it was attempted to make an arrest for the
violation of a criminal law of the State, it was held that the jury
should determine whether there was probable cause for making the
arrest without a warrant. In the present case I am of the opinion
that there was sufficient evidence to authorize the judge to submit
to the jury whether the offender was endeavoring to escape, or for
any cause there was likely to be a failure of justice for the want of
an officer to issue the warrant, if indeed the warrant was necessary.
There was evidence to show that when complaint was made to the
marshal of the town, the accused saw what was occurring and
began to leave; that when the marshal approached him he ran away
and could not be overtaken. If it should appear that one is guilty
of disorderly conduct in violation of a municipal ordinance, and,
upon seeing a policeman or the town marshal approaching, leaves
the scene, starts in a walk, breaks into a run, and finally escapes
from sight in the gathering gloom of the evening by running, so
that he can not be found for the time being, it seems to me that it
may well be submitted to a jury whether he was endeavoring to es-
cape. It is true that the defendant obtained his gun, and about a
half or three quarters of an hour later in the evening was found on
the public square, where he attempted to kill the marshal when the
latter appeared coming around a corner. The mere fact that he
did not leave town is not conclusive that he was not attempting to
escape. Very often the more populous centers afford a better means
of hiding and escaping from justice than the sparsely settled coun-
try. Nor is the fact that he obtained his gun and was seen on the
public square such conclusive proof that he did not intend to escape
as to authorize this court to assume the functions of a jury and de-
termine that fact. It may be suggested that it was illogical for him

to return to the public square if he intended to escape altogether, and that so doing indicated that the intention was only to escape from illegal arrest. To borrow the thought of a great jurist, it is illogical to commit crime; and if one does an illogical thing, it is not surprising that he does it in an illogical way, or acts illogically afterwards. The fact that the man ran and escaped from something is unquestionable. Whether his purpose was to escape altogether from arrest, or whether it was only to evade an illegal method of arrest, may well be left to the jury. This court may take judicial cognizance of many things, but I do not think that we can take cognizance of whether a fleeing violator of law intends to escape from arrest, or only from illegal arrest. Generally violators of law who flee are more interested in escaping arrest than in the question whether the officer is acting with due formality, or whether the arrest is to be classified as legal or illegal. In many instances of the commission of disorder, when the peace officer appears the guilty parties immediately cease their violation of law and walk or run away. Strictly speaking, the offense is often not committed under the eye or in the immediate presence of the officer. But the gathered crowd is there, the disorder is going on until he appears or is sent for; perhaps there are visible evidences of a breach of the peace or of disorder abandoned at his approach; and surely the perpetrators will not be allowed to escape on the theory (determined by the court, not the jury) that they were running away from the scene of the offense lest they be arrested without a warrant. To lay down such a rule would be to largely destroy the efficiency of peace officers. While illegal arrests are to be discountenanced, and are no more approved by me than by my brethren, yet I think, under the evidence in this case, it was proper (certainly if the offense had been proved to have been committed by the defendant) to submit to the jury whether he was escaping, and whether the officer rightly undertook to arrest him without a warrant.