WILLIAM TATUM, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

Where the assault was by inflicting a dangerous wound upon the head with a stick, proved by a physician to have been a weapon likely to produce death, and exhibited at the trial in presence of the jury, and where the evidence disclosed no motive for the assault, other than a wicked intention to take the life of a sleeping man, a verdict for assault with intent to murder is not wanting in support, either as to the character of the weapon, or as to the existence of the specific intent to murder.

Criminal law. Assault with intent to murder. Before Judge McCUTCHEN. Catoosa Superior Court. May Adjourned Term, 1877.

Reported in the opinion.

J. A. WJOHNSON, by brief, for plaintiff in error.

A. T. HACKETT, solicitor general, for the state.

BLECKLEY, Judge.

Two brothers set out from Haralson county to find a better country. They had with them two satchels, a pistol, a mule worth sixty or seventy dollars, and a watch worth eight or nine dollars. They intended to go into Cherokee county. As they journeyed in that direction, a stranger, who traveled on foot, and carried a stick, a pistol and a satchel, overtook them, and prevailed upon them to change their destination. He was going to Tennessee, and wanted them to go with him. Satisfied with the inducements which he mentioned, they consented; and for four days, the party went on amicably together. The mule served first one and then another, the stranger taking his turn on the saddle with the rest. On the night of the fourth day, they lodged in an uninhabited house in Catoosa county. Their bed was an old doorshutter placed in front of the fire. Sometime before day, the next morning, the brothers arose and found the stranger already up. Leaving him up, they lay down again, and fell asleep. While they slept, he assaulted one of them violently with his stick, inflicting a dangerous wound upon the head, and, in the struggle which ensued, dislocating or injuring severely two fingers of the hand. The other brother, awakened by the noise, and calling out to know what was the matter, was also attacked with the stick, and beaten on the head. The brothers escaped from the house, and the stranger went off through the darkness, and did not return. The assault commenced and ended in silence. The motive and purpose of it were left unexplained. There had been no previous disagreement or difficulty. At the trial, the stick used on the occasion was exhibited to the jury. A physician testified that it was a weapon likely to produce death. Like evidence was given by the prosecutor, whose head it had wounded. The jury found a verdict of guilty. A motion for new trial was overruled by the court; the sole

grounds of the motion being, that the verdict was without sufficient evidence, contrary to evidence, and contrary to law.

It is urged in argument that the stick was a mere walking-stick, and that while it might by chance have produced death, it was not likely to do so.   To this we answer, that the jury saw it for themselves, and had, besides the opinion of a physician in respect to its efficiency as a deadly weapon. The prosecutor, who had felt its application to his own head, gave substantially the same opinion.   There is no description of the stick in the record ; neither its size nor weight is stated.   The wound it produced, is shown by the testimony of the physician to have been a dangerous wound.   We can see no reason to doubt that the stick was a weapon likely to produce death.   It is urged, also, that no intent to murder was established—that no motive to commit murder appeared from the evidence ; and that if there had been a motive, the opportunity was so favorable, there would have been actual murder, and not a mere attempt.   It is asked why was not the pistol used ? or a knife ? or a rock ? or a heavy club ?   We suppose assassins, like other mortals, are liable to make mistakes. Men, even when their ends are wise and virtuous, do not always select the best means at their command. ·  There is no presumption that those having foolish and wicked ends in view, are either more discreet or more fortunate.   It is a great blunder to engage in crime at all, and how many subordinate or secondary blunders may occur in the course of a criminal transaction, is matter of much uncertainty.   It is said there had been no dispute, and nothing to engender malice ; and that if the prisoner's motive was to plunder his fellow-travelers, he might have accomplished his purpose while they were asleep, with even greater security than by attempting to slay them one at a time.   But this is to suppose the prisoner guided by correct reasoning, when the strong probability is, that he was guided by false reasoning. He acted like a fool, and it is altogether unlikely that he reasoned like a philosopher.   His mind went astray, and who can

follow it? It is not pretended that he was insane; and if he was not, he must have had some motive for striking a sleeping man on the head with a stick in a lonely outhouse. He acted as if he meditated murder, either for its own sake, or as a means to some other end. By his actions he must be judged. Let him suffer the penalty.

Judgment affirmed.