## PALMOUR *v.* THE STATE.

In the trial of a murder case where the statement of the accused authorized a finding that the slayer at the time of the killing acted under the fears of a reasonable man, it was error to charge the jury, in substance, that before the killing of one who manifestly intends, by violence or surprise, to commit a felony upon the habitation, property, or person of another, is justifiable, it must appear that such killing was absolutely necessary to prevent such attack or invasion. In such a case the killing would be justifiable where the circumstances were such as to excite the fears of a reasonable man that such an attack was intended, even if at the time of the killing there might not have been in fact any real necessity to kill in order to prevent the attack.

Argued July 21,— Decided August 9, 1902.

Indictment for murder. Before Judge Estes. Habersham superior court. May 9, 1902.

Wilbanks was shot and killed by Palmour at night, at Palmour's house. The testimony in the record tends to support the theory of murder. The accused introduced no evidence, and made the following statement: "Mr. Wilbanks came to my house late in the evening before that took place, and stayed around there with

me and ate supper; and after supper he said he was going home, and went off; and after dark awhile me and my wife went to bed and went to sleep; and in the night, about eleven o'clock I suppose, we were waked up by a noise at the kitchen door, and she told me somebody was trying to break into the house, and I told her I reckon not, and she called me and said there was somebody — said for me to get up and see ; and I jumped up out of my sleep and grabbed my gun and went out of the front door in my night clothes, and when I went around the corner of the house I. saw a man coming in from the smoke-house right close to the kitchen door, and I asked him what he was doing there — what he was up to, and he said it was none of my damned business. It was night, and he kept coming toward me, and I didn't know what he was up to, and what he had to hurt me with; and being scared, I didn't recognize his face, and I shot, and I didn't know until after I had shot whom it was. After I found out it was him I was very sorry, and told him I was very. sorry it happened, and asked him why he was there and what he was doing, and he never made me any reply. . . It was dark, and I didn't know who it was, or whether he had weapons or not, and shot to protect myself and my home, just like any of you would have done if you had been there."

For the other facts see the opinion.

*H. H. Dean, Fermor Barrett,* and *J. W. H. Underwood,* for plaintiff in error. *Boykin Wright, attorney-general,* and *W. A. Charters, solicitor-general,* contra.

COBB, J. Palmour was convicted of murder, and complains that the judge erred in refusing to grant him a new trial. The judge charged the jury as follows: " If you shall believe from the evidence that the killing was to prevent an injury to himself, his family, or property, or he had reasonable cause to apprehend trouble of that sort, what was the pressing necessity ? You see it must appear that such killing was absolutely necessary to prevent such attack or invasion and that serious injury might occur to the family or property of the person killing." The error assigned upon this charge is that it confused the provisions of section 70 of the Penal Code with those of section 72. The provisions of section 70, so far as applicable to the present case, are as follows: " Justifiable homicide is the killing of a human being . . in defense of habitation, property, or person, against one who manifestly intends or en-

deavors, by violence or surprise, to commit a felony on either." Section 72 is as follows: "If after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another can not be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing." While section 71 is not referred to in the assignment of error, it is so connected with the provisions of section 70 as that it must be considered with that section in every case to which it is applicable. The provisions of section 71 are as follows: "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge." It is contended that it is not necessary for one who seeks to justify the killing under the provisions of section 70, quoted above, to show in all cases that the killing was absolutely necessary to prevent the attack or invasion; that the rule of absolute necessity applies only in those cases where the circumstances are such that there is not only time and opportunity for persuasion, remonstrance, or other gentle measures, but a duty to use such measures before resorting to the extreme recourse of slaying the assailant; and that where the circumstances are such as to excite the fears of a reasonable man that another is endeavoring, by violence or surprise, to commit a felony on his habitation, his property, or his person, he would be justified in killing such person. We think this contention is correct. The practical effect of the charge of the judge was to instruct the jury that, notwithstanding the circumstances were such as to excite the fears of a reasonable man, there must still be an absolute necessity for the killing. If one approaches the habitation of another at such a time or in such a manner that it is either manifest, or that a reasonable man would infer, that he intended, by violence or surprise, to commit a felony upon his habitation or some person or property therein, he is not required to use persuasion, remonstrance, or other gentle measures,

before resorting to extreme force to repel the real or supposed attack, even though subsequent events may show that no actual attack or assault was intended. This distinction between the cases provided for in the two sections of the Penal Code is clearly pointed out by Mr. Chief Justice Lochrane in *Pound* v. *State*, 43 *Ga.* 133. We think the court erred in giving the charge complained of, and that under the facts of the case the error was of such a character as to have required a new trial. The motion for a new trial contains numerous assignments of error upon the charge in reference to the law of manslaughter. Some of these charges are not altogether correct; but as the accused was not, under any view of the case, guilty of manslaughter, these errors alone would not authorize a reversal of the judgment refusing a new trial.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*