## 22416. HALL v. THE STATE.

DECIDED SEPTEMBER 1, 1932.

*P. Z. Geer,* for plaintiff in error.

*B. T. Castellow, solicitor-general, Bond Almand,* contra.

LUKE, J. ■ Wright Hall was charged with committing the offense of assault with intent to murder by shooting John Armstrong with a pistol on July 5, 1930, in Miller county. A jury found the defendant guilty and recommended that he be punished as for a misdemeanor, and the court sentenced him to serve twelve months on the State farm. He excepts to the judgment overruling his motion for a new trial.

■ John Armstrong, sworn for the State, testified in part as follows: "He [the defendant] shot me with a pistol in Miller county, Georgia, on July 5, 1930. He shot me in the daytime, early in the morning. It was at the house where I was living. . . I have not done anything to him. I walked into the house, and a woman was in there, and I told her to come and cook my breakfast. The woman was Lula Hill. . . He [the defendant] said to me: 'What do you want to see that woman about?' And I begun to look at him, and about the time that I got half turned he shot me. He hit me in my low bowels. The ball went through me. . . I did not have any weapons at the time Wright Hall

shot me. I was not trying to hurt him or harm him in any way. He may have been fifteen or eighteen feet from me when he shot me. . ." Gus Donnelly, sworn for the State, testified in part as follows: "Some two or three weeks before Wright Hall shot Armstrong, John Armstrong tried to borrow some heavy loaded shells from me. He said he wanted to shoot Wright Hall. . . So far as I know, Lula Hill must have been the bone of contention. John Armstrong and Lula Hill lived together, and Wright Hall would come there once in a while." Lottie McGrift, sworn for the defendant, testified in part as follows: "I was sitting down, and looked back when John Armstrong came up on the porch, and he picked up a chair in his hand, and Wright Hall and Lula Hill were sitting laughing and talking. And John Armstrong come in with the chair, and Lula run out, and John Armstrong started on Wright Hall with a chair, and Wright Hall was looking back, and backed between the dresser and the house. . . I wa'nt looking for any pistol. I saw there was going to be a fight, and I run out and heard a pistol shot. I looked back and Wright Hall had the pistol in his hand. . . I tried to keep them from fighting. . ."

The part of the defendant's statement material to the issues raised in this case is as follows: "John Armstrong . . come on the porch . . just a cursing Lula Hill, . . and Lula Hill run out, and he come after me with a chair, and run me up in the corner, and was trying to hit me with the chair, and I shot him. If I had not shot him he would have killed me with the chair. . . I did not know he was mad with me." Lula Hill, sworn for the State in rebuttal, testified in part as follows: "Wright Hall got there first that morning. John Armstrong come, and me and Wright Hall was sitting on a table. John Armstrong come in and told me that Annie Butler said come on and get breakfast. I saw they were going to fight, and I run out. I did not see Wright Hall with a pistol before I left. He done the shooting in the house and come out with the pistol in his hand. . . Wright Hall was running backwards with his hand in his pocket, and I run out of the house. . . I left because I thought they were going to fight. Lottie McGrift said to John Armstrong not to come in there and have any fuss. . . I was a good piece from the house when the pistol fired. . . Wright Hall was staying with my uncle, Dump McGrift. . . I don't know what John Armstrong and Wright

Hall were fighting about that morning. I am not John Armstrong's woman. . . John Armstrong did not tell me to 'come, God damn it, and get my breakfast,' and draw a chair on me. John Armstrong never cursed me in his life." In rebuttal, John Armstrong, sworn for the State, testified: "I did not have a chair after Wright Hall . . trying to hit him with it when he shot me. I was not trying to hurt him in any way. . . I did not have a chair after Lula Hill. . . I just walked in and told her Annie Butler said to come to breakfast, and she got up and started. Lula Hill is not my woman, and never was."

In his brief, counsel for plaintiff in error says: "The State's evidence, incredible of course, made out a case of assault with intent to murder, but we insist that the State's version of the difficulty is too unreasonable to be given any credence. . ." The State's evidence did make out a case of assault with intent to murder, and the credibility of the witnesses is a matter peculiarly for the consideration of the jury. Therefore we are constrained to hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

■ Special ground 1 avers that the court erred in charging the law of voluntary manslaughter, for the reason that this law was not involved in the case. The evidence refutes this contention, and there is no merit in the ground.

■ The first assignment of error under special ground 2 is the same as that in the preceding ground, and there is no merit in it.

The decision in the case of *Deal* v. *State, 145 Ga. 33* (88 S. E. 573), unequivocally refutes the contention made in the second assignment under special ground 2, that the court, after charging section 65 of the Penal Code, erred in not qualifying, in connection therewith, the part relating to "provocation by words, threats, menaces," etc., in the manner indicated in that ground. We quote from the headnotes of that decision as follows: "1. On the trial of one for murder, where the evidence of the defendant's statement at the trial would authorize the jury to find that the person killing acted in self defense on account of a reasonable fear aroused in his mind by words, threats, or menaces, in connection with the other facts in the case, it is not erroneous for the court, in instructing the jury on the law of voluntary manslaughter, as contained in the Penal Code of 1910, § 65, to fail or refuse to charge in

immediate connection therewith the right of the jury to consider words, threats, or menaces in determining whether the circumstances attending the homicide were such as to justify the fears of a reasonable man that his life was in imminent danger or that a felony was about to be committed upon his person. 2. Instructions on the law of voluntary manslaughter and justifiable homicide should be independent of each other. 3. Although the facts of a given case might authorize an instruction as to the right of the jury to consider words, menaces, or threats, in connection with the facts of the case, as being sufficient to arouse the fears of a reasonable man that his person was in apparent or real danger of a felonious attack or that his life was in imminent danger, the failure to give such an instruction would not be erroneous solely for the reason that the court gave in charge to the jury the law of voluntary manslaughter in the language of the Penal Code of 1910, § 65." The decision in the case of *Phillips* v. *State,* 11 *Ga. App.* 262 (75 S. E. 14), which rules contrary to the decision in the *Deal* case, supra, and which was relied on by counsel for plaintiff in error, was followed in *Manson* v. *State,* 14 *Ga. App.* 837, 839 (82 S. E. 763), and the latter case was unqualifiedly disapproved in the concluding paragraph of the decision in the *Deal* case. There is no merit in the assignment.

■ Special ground 3 complains that the court's charge upon justifiable homicide, which was substantially in the language of the Penal Code (1910), § 70, deprived the defendant of his defense that he shot under the "fears of a reasonable man." There is no merit in the ground.

■ It is averred in special ground 4 that in following his charge upon the law of justifiable homicide with a charge in the language of section 71 of the Penal Code (1910), the "court gave the jury two conflicting rules of law" and thereby confused the jury. In *Palmour* v. *State,* 116 *Ga.* 269, 271 (42 S. E. 512), the court said that section 71 must be considered in connection with section 70 "in every case to which it is applicable." The assignment is without merit.

■ It appears from special ground 5 that after charging the jury on voluntary manslaughter in the language of section 65 of the Penal Code (1910), the court charged the law of justifiable homicide as laid down in section 70 of the Penal Code, and followed

the latter charge with a charge in the language of section 71 of the Penal Code. It is averred that said charge "commingled the law of self-defense under section 70 of the Penal Code and defense of person under section 70 and 71 of the Penal Code with the law of voluntary manslaughter, and . '. deprived this defendant of the defense that words, threats, menaces or contemptuous gestures may, under some circumstances, to be determined by the jury, be sufficient to excite the fears of a reasonable man that a felony is about to be committed upon him." The law of voluntary manslaughter was charged distinctly and apart from the law as to justifiable homicide, and there is no merit in this ground.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur.*