MULLIS *v.* THE STATE.

No. 14602.   SEPTEMBER 13, 1943.

576

L. F. Watson and E. L. Stephens, for plaintiff in error.

T. Grady Head, attorney-general, James F. Nelson, solicitor-general, and L. C. Groves, assistant attorney-general, contra.

JENKINS, Presiding Justice. 1. Under the Code, § 27-207, "an arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant;" and under § 27-211, even "a private person may arrest an offender, if the offense is committed in his presence or within his immediate knowledge." A police officer of a city, in making an arrest for an offense against the State law, or for a violation of an ordinance of the municipality committed in the city limits, falls within the protection of the Code section first above cited. Thus, a city police officer has authority to arrest without a warrant one who violates a State statute in his presence, or to so arrest within the city one who violates a city ordinance in his presence. Graham v. State, 143 Ga. 440 (2a, 3a) (85 S. E. 328, Ann. Cas. 1917A, 595) ; Faulkner v. State, 166 Ga. 645, 665 (144 S. E. 193) ; Porter v. State, 124 Ga. 297, 300 (52 S. E. 283, 2 L. R. A. (N. S.) 730), and cit.

2. "The term felony means an offense, for which the offender, on conviction, shall be liable to be punished by death or imprisoned in the penitentiary, and not otherwise. Every other crime is a

misdemeanor." Code, § 26-101. "Any person who shall be and appear in an intoxicated condition on any public street or highway or within the curtilage of any private residence . . which said drunkenness or intoxication . . must be made manifest by boisterousness, or by indecent condition or acting, or by vulgar, profane or unbecoming language, or loud and violent discourse of the person or persons so intoxicated or drunken, shall be guilty of a misdemeanor." § 58-608. The statute thus covers the prohibited drunken conduct in any one or more of the ways specified, and not the mere fact of being drunk. *Griffin* v. *State*, 183 *Ga.* 775, 779 (190 S. E. 2) ; *Plemons* v. *State*, 60 *Ga. App.* 639 (4 S. E. 2d, 681), and cit. (*a*). An assault with intent to murder, being punishable by imprisonment in the penitentiary, is a felony. Code, § 26-1403. An assault is an attempt to commit a violent injury on another; and a "bare assault" or simple assault and battery is only a misdemeanor. §§ 26-1401, 26-1402. "Whether an assault and battery committed by striking one over the head" with a weapon likely to produce death "would amount to a felony," in that it was done with intent to kill even though death did not in fact result, "would be a question for the jury." *Surles* v. *State*, 148 *Ga.* 537 (4) (97 S. E. 538). See also *Wright* v. *State*, 168 *Ga.* 690 (2) (148 S. E. 731) ; *Talum* v. *State*, 59 *Ga.* 638.

3. Where a person is lawfully arrested, either for a felony or a misdemeanor, and he has notice or knowledge, or by belief or reasonable grounds for belief has "the equivalent of knowledge," that the person making the arrest is an officer, it is the duty of the person arrested to submit quietly. *Morton* v. *State*, 190 *Ga.* 792, 799 (10 S. E. 2d, 836), and cit. If, under such circumstances and merely to prevent the officer "from lawfully arresting him in a lawful way," he kills the officer, "the crime is murder." *Glaze* v. *State*, 156 *Ga.* 807 (2-a, *b*), 813, 814 (120 S. E. 530) ; *Williford* v. *State*, 121 *Ga.* 173 (48 S. E. 962) ; *Graham* v. *State*, 146 *Ga.* 18 (90 S. E. 473) ; *Johnson* v. *State*, 130 *Ga.* 27 (2), 30 (60 S. E. 160) ; *Brooks* v. *State*, 114 *Ga.* 6, 8 (39 S. E. 877) ; 1 Wharton's Criminal Law, 778, § 541; 1 Warren on Homicide, 343, 344, § 76.

4. Even though an officer may have a legal right to make an arrest, still he can use no more force than is reasonably necessary under the circumstances, and cannot use unnecessary violence dis-

proportionate to the resistance offered. 4 Am. Jur. 52, § 3; 6 C. J. S. 612, § 13. Where the offense is a felony, a greater force even to the extent of slaying the offender in order to prevent his escape may, where sufficient circumstances so indicate, be justified. But where the arrest is only for a misdemeanor, such extreme and deadly force merely to effect the arrest and prevent escape is not justified. *Newkirk* v. *State*, 57 *Ga. App.* 803, 807 (196 S. E. 911); *Holmes* v. *State*, 5 *Ga. App.* 166 (2), 170 (62 S. E. 716); 4 Am. Jur. 54, 56, §§ 78, 80; 8 C. J. S. 613, 614, §§ 13-*b*, *c*.

5. If an officer who makes a lawful arrest, merely for a misdemeanor committed in his presence, does so in an unlawful manner by making an unprovoked assault with a weapon likely to produce death, and with intent to kill the offender, such as would constitute a felony (Code, § 26-1403); or if the circumstances are sufficient to excite the fears of a reasonable man that such a felony is intended, and the offender slays the officer, not in a spirit of revenge or for the purpose of preventing the lawful arrest, but to protect himself from what is or what reasonably appears to be such a felonious assault, then, in either of such events, the killing would be justifiable. Code, §§ 26-1011, 26-1012; *Smith* v. *State*, 147 *Ga.* 689 (4), 694 (95 S. E. 281, 15 A. L. R. 490).

6. But since an assault and battery is a misdemeanor and not a felony, the mere unlawful striking of an offender, even so as to bring blood, by an officer lawfully arresting him for a misdemeanor would not be sufficient to justify the offender in killing the officer, unless, as stated, the conduct of the officer was such as to excite the fears of a reasonable man that a felony was in fact about to be committed, and the offender really acted on such fears. Code, § 26-1012; *Johnson* v. *State*, 136 *Ga.* 804 (4) (72 S. E. 233); *Battle* v. *State*, 103 *Ga.* 53 (4), 59 (29 S. E. 491); *Simmons* v. *State*, 79 *Ga.* 696, 700 (4 S. E. 894); *McCray* v. *State*, 134 *Ga.* 416, 430 (68 S. E. 62, 20 Ann. Cas. 101); *Palmour* v. *State*, 116 *Ga.* 269 (42 S. E. 512); *Lyens* v. *State*, 133 *Ga.* 587, 592, 594 (66 S. E. 792).

(a) If a person under lawful arrest for a misdemeanor kills the officer because of an unlawful assault by the officer upon him, even such as to draw blood, but such assault is not so serious as to amount to a felony, or to what would reasonably appear to amount to a felony, then, in either event, the person slaying the officer

would be neither guilty of murder, nor guiltless, but the offense would be voluntary manslaughter. *Keener* v. *State,* 18 *Ga.* 194 (10), 232, 236 (63 Am. D. 269); *Simmons* v. *State,* supra; *Johnson* v. *State,* 72 *Ga.* 679, 695; *Monroe* v. *State,* 5 *Ga.* 85 (4); 1 Warren on Homicide, 509, § 103, and cit.

7. Where an arrest is not lawful, the person sought to be so arrested, contrary to his right if the arrest had been lawful, has the right to resist, and in doing so "has a right to resist force with force proportionate to that being used in unlawfully detaining him." But, even here, the mere fact of unlawful arrest, in the absence of an application of unlawful force amounting to or reasonably appearing to amount to a felony, will not authorize the killing of the officer. Yet if, in the progress of the transaction, the officer is or reasonably appears to be about to commit a felony upon the other person, such as an assault with intent to kill with a weapon likely to produce death, or by so acting and making such "a show of violence as to excite in the person sought to be arrested the fears of a reasonable man that a felony is about to be committed upon him, and such person acts under the influence of those fears and not in a spirit of revenge, he may protect himself, although it may be necessary to slay the officer for that purpose." In either of the two events just stated, he would be guilty of no crime. *Norton* v. *State,* 137 *Ga.* 842 (3) (74 S. E. 759); *Shafer* v. *State,* 193 *Ga.* 748 (4), 756 (20 S. E. 2d, 34). But if the officer does not attempt or reasonably appear to attempt a felony, but only the misdemeanor of an unlawful arrest, or if the person arrested is only "put in fear of a lesser injury than that of a felony, the homicide would be manslaughter." *Wall* v. *State,* 153 *Ga.* 309 (11), 323 (112 S. E. 142), and cit.; *Shafer* v. *State,* supra; *Porter* v. *State,* 124 *Ga.* 297, 305 (52 S. E. 283, 2 L. R. A. (N. S.) 730); *Thomas* v. *State,* 91 *Ga.* 204 (2), 206 (18 S. E. 305); *Coleman* v. *State,* 121 *Ga.* 594 (4-8), 599 (49 S. E. 716); *Jenkins* v. *State,* 3 *Ga. App.* 146, 148 (59 S. E. 435); *Perdue* v. *State,* 5 *Ga. App.* 821, 825-827 (63 S. E. 922), and cit.; *Dorsey* v. *State,* 7 *Ga. App.* 366, 371 (66 S. E. 1096); 1 Wharton's Criminal Law, 779, 780, § 542, and cit.; 1 Warren on Homicide, 345, 346, 505-507, §§ 76, 102, 103.

8. "The law presumes every killing to be malicious until the contrary appears from circumstances of alleviation, excuse, or jus-

tification; and it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury." *Marcus* v. *State,* 149 *Ga.* 209 (99 S. E. 614) ; *Godfrey* v. *State,* 135 *Ga.* 571 (69 S. E. 1080.). But "where the evidence relied upon by the State to establish the fact of the homicide discloses circumstances of mitigation or justification, such evidence does not raise a presumption of malice;" and in such a case the burden does not devolve on the defendant to show such facts as would reduce the homicide from murder to manslaughter or justify it. *Surles* v. *State,* 148 *Ga.* 537 (97 S. E. 538), and cit.; *Wilson* v. *State,* 190 *Ga.* 824 (9), 832 (10 S. E. 2d, 861) ; *Brown* v. *State,* 184 *Ga.* 305 (191 S. E. 108).

(*a*) In the instant case there was no eye-witness of the immediate homicide. Witnesses for the State, who saw the defendant soon after the killing of the city police officer, testified that the defendant admitted to them his stabbing and killing of the officer; but they also testified that the defendant then had in his forehead and the back of his head wounds which were fresh and bleeding, and that he then told these witnesses the deceased "did it." A State trooper testified that after his arrest of the defendant on the next day, although the defendant admitted having killed the deceased "with his knife," this statement was coupled with a reference to an alleged head wound, and a further statement that the deceased in the dark "had hit him a couple of times," but "he didn't know what [the deceased] hit him with." Under this testimony for the State, as well as testimony by witnesses for the defendant who saw and heard what occurred between the deceased and the defendant immediately before the killing, and also heard, although they did not see, what happened just outside of their home during the actual homicide, one of which witnesses heard the defendant tell the deceased, "You knock the blood out of me," and heard the sound of blows being struck—the burden was on the State to show malice, and that the homicide was murder rather than justifiable homicide or voluntary manslaughter.

In the absence of any evidence as to a warrant or as to any municipal ordinance that was violated, the burden was on the State to show that the defendant had violated some law of the State in the presence of the deceased police officer. See *Griffin* v. *State,* 183 *Ga.* 779-781 (supra). While there was testimony that the defend-

ant had been drinking, there was no evidence of any illegal conduct on his part up to the arrest, except testimony by a witness for the defendant that, just before or while drinking water at a negro house near which the homicide occurred, he had said in the presence of two men and a woman, "I am as drunk as a son of a b——." Under the evidence, the officer appeared about this time; but it is not clear whether he heard the remark, so as to have made it "vulgar," or "unbecoming language" spoken in his presence while the defendant was drunk, and thus, to have authorized an arrest under the Code, § 58-608. Nor was the evidence clear as to whether the arrest was made for either of those reasons, neither, of which was mentioned by the deceased to the defendant, or only because the deceased had previously told him to go home and he had not done so, which was the only statement heard by the witnesses, just before the homicide, relating to the cause of arrest.

9. The charge to the jury was for the most part exceptionally able, clear, and fair. But while the judge properly charged generally the law of murder and of justifiable homicide in resisting an actual felony, under the Code, § 26-1011, and correctly charged the general law of voluntary manslaughter, as well as when a police officer can arrest without a warrant, his right to use force reasonably necessary to effect a lawful arrest, and the right of the defendant to resist with reasonably necessary force an unlawful arrest, yet, under the preceding rules and the evidence stated, it was error to charge that "a person may kill to prevent an illegal arrest only when it is reasonably and absolutely necessary," since this instruction wholly eliminated the principle of "reasonable fears" of a felonious assault by the deceased, a resistance to which would constitute justifiable homicide under the Code, § 26-1012. *Palmour* v. *State,* 116 *Ga.* 269 (supra). The judge also failed to charge the rule of that Code section; and failed to give to the jury any guide, in connection with the right of one unlawfully arrested to resist, as to when such resistance would constitute justifiable homicide, and when it would constitute voluntary manslaughter; and failed to give to the jury any rule as to the right of one lawfully arrested merely for a misdemeanor, where the officer uses unlawful force, as to when such resistance would be justifiable homicide, and when it would be voluntary manslaughter. Upon these grounds it was error to refuse a new trial.

*Judgment reversed. All the Justices concur.*